## 17380.   McGLOTHIN *v.* UNITED STATES NATIONAL LIFE AND CASUALTY COMPANY.

1. "The law of this State expressly requires a contract of fire insurance to be in writing, and such a contract is not valid unless it is in writing." *Athens Ins. Co.* v. *Evans,* 132 *Ga.* 703 (4) (64 S. E. 993); Civil Code (1910), §§ 2470, 2499.

2. Furthermore, in this case there were conditions precedent to the issuance of the policy which were never waived or met, and the policy was never issued.   Insurance is a matter of contract, and it affirmatively appears that the company entered into no sort of contract for the insurance claimed.

3. Where, pending mere negotiations for a policy of insurance, the person on whose life it might or might not have been written dies, the company is not liable on the proposed policy simply because it accepted premiums in advance on the supposition that the policy would be issued. *Fowler* v. *Preferred Ins. Co.,* 100 *Ga.* 330 (2) (28 S. E. 398); *N. Y. Life Ins. Co.* v. *Babcock,* 104 *Ga.* 67 (1) (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. R. 134); *Taylor Lumber Co.* v. *Clark Lumber Co.,* 33 *Ga. App.* 815 (3) (127 S. E. 905), and cases cited; and compare *Ga. Casualty Co.* v. *Dixie Trust &c. Co.,* 23 *Ga. App.* 447, 451 (98 S. E. 414).

4. It appearing, as a matter of law, that the insurance company was not liable, the judge of the municipal court did not err in directing a verdict in its favor accordingly.   The superior court properly dismissed the certiorari.

DECIDED JANUARY 24, 1927.

Certiorari; from Fulton superior court — Judge Humphries. March 22, 1926.

*Savage & Crawford,* for plaintiff.

*Branch & Howard, E. L. Tiller,* for defendant.

BELL, J.   The exception in this case is to a judgment of the superior court dismissing a certiorari to review a judgment of the municipal court of Atlanta against the plaintiff and in favor of the defendant insurance company.   The action was on an alleged policy of insurance in the sum of $550, which was never issued and which indeed was never applied for, except orally by the plaintiff, who was to be the sole beneficiary.   The plaintiff made application for the policy in behalf of his brother, and paid four weekly premiums in advance.   Before this brother, whose life was to be insured, could be located, in order that he might sign the written

---

Fire Insurance, 26 C. J. p. 45, n. 93.

Insurance, 32 C. J. p. 1091, n. 16; p. 1115, n. 73; 33 C. J. p. 124, n. 58; p. 131, n. 43.

Life Insurance, 37 C. J. p. 378, n. 32; p. 381, n. 97; p. 401, n. 46.

application for the policy as prepared at the instance of the plaintiff, and be examined in accordance with the requirements of the company, the plaintiff paid four additional weekly premiums. His brother then died without anything else having been done to consummate the contract. The company's general agent and its examining physician both testified that as to insurance in amounts over $250 the company required the applicant to undergo a satisfactory medical examination as a condition precedent to the issuance of the policy; that they both went to the residence of the person now alleged to have been insured, but were never able to find him, that he was never examined, that he never signed the application, and that no policy was ever issued. The printed form of application, which had been partly filled out, but which awaited the signature of the person on whose life the insurance was wanted, provided that "Medical examination is required when the amount of insurance applied for together with that in force exceeds $250." Then followed the blanks to be filled in by the medical examiner. Under these was a stipulation that "Any misrepresentation wilfully made shall render the policy void and that the policy shall not be binding upon the company unless upon its date I shall be alive and in sound health." Following this was a blank space for the applicant's signature. The spaces to be filled in as indicated continued to be blank. The copy of the alleged policy, as attached to the suit, contained two stipulations as follows: "The company assumes no obligation prior to the date hereof," and "If the insured is not alive and in good health on the date hereof, the liability of the company shall be limited to the return of premiums paid on the policy." The date, left blank, was not filled in, because the policy had not been issued.

When the company learned of the death of the person on whose life the insurance might have been written, it promptly offered to return the premiums which had been paid. With reference to these premiums the company's general agent testified: "Mr. Webb kept collecting the premiums and I was holding up the application until I could get Matthews [the person to be insured] examined. If he had passed he would have received the policy, but I could not send in his application until he had been examined. . . I don't know how long we would have continued collecting weekly premiums without examining him. . . We would probably have kept col-

lecting premiums for some time, in the hope of getting him examined." Webb, the agent who took the "application," testified that he informed the proposed beneficiary, who was paying the premiums, that his brother would have to be examined.

There was nothing to impeach or discredit any witness who testified. The above facts appear without dispute from the pleadings and the evidence. Under the principles stated in the headnotes, there was, as a matter of law, no liability against the company, and a verdict in its favor was properly directed. It follows that the superior court did not err in dismissing the certiorari.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*