### 47539. BASS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Argued October 5, 1972—Decided January 31, 1973—
Rehearing denied February 27, 1973 —

*Lanier, Powell, Cooper & Cooper, Jack L. Cooper,* for appellant.

*Burnside, Dye & Miller, A. Montague Miller,* for appellee.

DEEN, Judge. ■ There is no dispute as to the facts of this case. We are asked to decide whether Bass had uninsured motorist coverage as to bodily injury to himself, and, if so, whether a jury question is presented as to sums sought as penalty and attorney fees for bad faith. The parties agree that the insurer stands on three and only three defenses as follows: (1) Uninsured motorist coverage written as a part of the policy of insurance naming the 1966 Pontiac did not cover the appellant while the appellant was

driving the 1953 Plymouth in which the accident occurred; (2) The rejection of uninsured motorist coverage in the application for insurance on the 1953 Plymouth prevented the uninsured motorist endorsement written on the 1966 Pontiac from applying to the appellant while the appellant was driving the 1953 Plymouth; (3) The uninsured motorist endorsement on the Pontiac policy contained an exclusionary clause making this coverage inapplicable while the insured was driving the Plymouth. We examine each of these contentions in turn.

*That the named insured must be driving the vehicle described in the policy.* This question has already been decided contrary to the defendant's contentions. First of all, the endorsement clearly defines an "insured" as (1) the first person named in the declarations [i. e., the plaintiff] and while residents of his household, his spouse and the relatives of either; and (2) any other person while occupying an insured automobile. The covering agreement is "to pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle" because of bodily injury (a) to the *insured* or (b) to an owned motor vehicle "to which the liability coverage of the policy applies." Thus, property damage recovery is limited to the designated vehicle in the policy; bodily injury recovery is limited to an insured, and *insured* means the named insured, his spouse and relatives while residing with him regardless of whether or not they are in a vehicle, and, if so, what vehicle they are in, but other persons are insured only while in the vehicle described in the policy declaration. This has been unequivocally held in a number of cases. "The coverage applies not only to the owner of an insured automobile, but to his spouse and relatives of either if they live in his household. It covers them while riding in the insured car, in any other automobile, or while a pedestrian if the injury is caused

by an uninsured motorist." *Gulf American Fire & Cas. Co. v. McNeal,* 115 Ga. App. 286, 290 (154 SE2d 411). Since under Code Ann. § 56-407.1, no automobile liability insurance policy shall be issued (unless rejected in writing) which does not undertake to pay the insured for bodily injury which results from the fault of an uninsured motorist, any policy provision conflicting with this requirement is void. *Travelers Indemnity Co. v. Williams,* 119 Ga. App. 414 (167 SE2d 174) (holding that the insured was covered while a passenger in another car, also covered, and was entitled to stack coverage to the extent of his loss or the combined policy limits, whichever was less). The same result was reached in *State Farm Mut. Auto. Ins. Co. v. Murphy,* 226 Ga. 710 (177 SE2d 257), a case in which this defendant was also the insurer and where it litigated coverage of an insured under its policy killed by an uninsured motorist while riding in a vehicle not named in the policy. It follows that State Farm had actual knowledge at the time it filed the first of the above defenses that Georgia had decided the question, in a case where it was the named defendant, in a manner contrary to its contentions.

*That the insured had rejected uninsured motorist insurance on the Plymouth.* This defense would be good in law if the defendant were insuring only the automobile, but as it happens it is also insuring the *person* of the named insured, wherever he may be. When one rejects coverage as to an automobile named in the declaration, he has no right to any coverage under *that* policy. If he has another policy which does contain uninsured motorist insurance, he as the named insured is covered wherever he is, whether in that car, another car, or no car. But the uninsured *car* is not covered, and certain classes of persons are not covered unless they are in an insured vehicle. If a vehicle is not covered, no benefits under the liability policy of that vehicle exist so far as uninsured motorist insurance is concerned, but that is

the end of the matter. If there is another policy, and other coverage, such policy will be construed according to its own provisions, unaffected by the existence or nonexistence of an unrelated policy of insurance. If two policies exist they may be stacked. *State Farm Mut. Auto. Ins. Co. v. Murphy,* 226 Ga. 710, supra. If only one exists, it is applicable without regard to the other. In *Gulf American Fire & Cas. Co. v. McNeal,* 115 Ga. App. 286, supra, the plaintiff, covered by uninsured motorist insurance on one of his owned vehicles, sustained an otherwise compensable injury while driving another owned vehicle, and the defense was that "said policy did not provide uninsured motorists protection in connection with" the car he was operating. The court specifically ruled that this defense was untenable: "The effect of the restriction contained in the endorsement limiting the uninsured motorists coverage to 'Car No. 3 only' was merely to exclude Car No. 1 and Car No. 2 from the definition of 'insured automobile' under the uninsured motorists coverage, so that this coverage would be afforded to *other persons* only while occupying Car No . 3" but the insured was covered *as such* regardless of whether he was driving an owned insured automobile or an owned uninsured automobile. This being the case, and hinging upon the common-sense conclusion that to determine coverage one looks to the provisions of the policy in effect (not to the existence or nonexistence of some other policy), if there is a policy, and if it covers the insured wherever he may be, it is irrelevant that he owns another car which he is occupying and which does not have such coverage. It is also irrelevant, if the car has no coverage, whether the reason is that at the time the policy was issued the law requiring uninsured motorist coverage had not come into effect, or whether it was in effect, but the insured had elected to reject the coverage. The rejection of coverage under one policy does not work a forfeiture or estoppel as to coverage which exists under

another valid policy. The defendant puts forth no argument, and we can find none, which would determine the efficacy of existing coverage by the *reason* for failing to have other and different policies of insurance on other property. The *fact* of coverage having already been adjudicated is controlling as against this contention.

The proviso in Code Ann. § 56-407.1 (a) that an insured may reject coverage in writing and that, if he does so, coverage need not be provided unless thereafter requested in writing, obviously has no application where, after the rejection, the insurer again offers the coverage and the insured accepts the offer according to its tenor by retaining the endorsement and paying the increased premium charged for the uninsured motorist coverage. To hold otherwise would be to hold that there was no coverage *at all* regardless of the payment and acceptance of premium. To reiterate: When the insured paid for the Pontiac renewal he was entitled to such coverage as it afforded. Since no claim was made under the Plymouth policy, its provisions are not involved in this case. This should have been obvious from the decision in *McNeal,* supra.

That a different situation exists where two automobiles are covered under a single policy, see *State Farm Mut. Auto. Ins. Co. v. Johnson,* 126 Ga. App. 45 (190 SE2d 113).

*That the insured is not covered by virtue of an exclusion provision.* This defense is a bit more complicated. The U coverage endorsement on the Pontiac contained the following exclusion: "This insurance does not apply . . . to bodily injury to an insured while occupying . . . a vehicle owned by the named insured . . . if such vehicle is not an 'insured automobile.'" The endorsement has certain included specific definitions, one of which is: "Insured automobile . . . an owned motor vehicle provided the use thereof is by such first named insured . . ." This definition would seem to cover the insured in any vehicle he might

own, but under "Definitions" in the endorsement we are cited to certain words defined in the *liability* section of the policy, among them the term "owned vehicle," which, when located, restricts the term to an owned vehicle named in the policy declaration. Placing these three provisions together, of course, would reach a result contrary to the implication of the definition of "insured" in the endorsement, which, as we have said, means the named insured wherever he is and certain other persons "while occupying an insured automobile." More particularly, however, it runs counter to the provisions of Code Ann. § 56-407.1 (b) defining "insured" as the named insured "while in a motor vehicle or otherwise," as distinguished from guests and permittees who are covered in the vehicle "to which the policy applies." Both the Supreme Court and this Court have held that conditions contrary to the statute are void. See *State Farm Mut. Auto. Ins. Co. v. Murphy,* 226 Ga. 710, supra, and *State Farm Mut. Auto.Ins. Co. v. Barnard,* 115 Ga. App. 857 (156 SE2d 148), cases both involving this defendant. In particular, however, State Farm was the defendant in *State Farm Mut. Auto. Ins. Co. v. Harper,* 125 Ga. App. 696 (188 SE2d 813), where examination of the record reveals that the exact exclusion here relied upon has been held void because contrary to the provisions of the statute. In *Harper,* the insured owned two separate policies covering a Ford and Corvair respectively, both having liability and uninsured motorist coverage. Harper was driving the Ford when he collided with an uninsured motorist. State Farm paid uninsured motorist to the policy limit under the Ford policy but denied coverage of the insured (who had a judgment against the uninsured motorist in the sum of $20,000) under the Corvair policy because of the above quoted exclusion and the fact that the insured was not driving the Corvair at the time he was injured. This court held the clause in question void and unenforceable as

contravening the clear intent of the Uninsured Motorists' Act, and further held that the plaintiffs, Harper and his wife "were in the position of being insureds in the Ford policy, both because they were insured persons and the insured automobile was involved, and were insured under the Corvair policy since they fell in the class of the named insured and his spouse." The position of Harper under the Corvair policy and Bass under the Pontiac policy in this case is identical; the policy provisions are identical, and the definitions and exclusion clauses are identical.

It follows that Bass was covered under the uninsured motorist endorsement as a named insured, and that the restriction attempted in the exclusionary clause is void.

State Farm, being the named defendant, in the *Harper, Murphy* and *Barnard* cases, could not have been unaware that each of its defenses had been decided adversely to its contentions here in cases where it was actually involved. It follows that the prayers of the complaint setting out these facts and seeking penalty and attorney fees under Code Ann. § 56-1206 raise a jury issue on the question of bad faith in attempting to relitigate these issues.

The trial court erred in granting a judgment on the pleadings to the defendant.

*Judgment reversed. Bell, C. J., Pannell, Quillian, Evans and Stolz, JJ., concur. Hall, P. J., Eberhardt, P. J., and Clark, J., dissent.*

CLARK, Judge, dissenting. I disagree with that portion of the foregoing opinion dealing with the second defense as I submit plaintiff's express rejection in writing of uninsured motorist coverage on his 1953 Plymouth in conformance with the election given by our statute denied such uninsured motorist coverage on that specific vehicle even though such coverage did exist on the other vehicle, the 1966 Pontiac.

The trial judge, Hon. Edwin D. Fulcher, expressed a similar conclusion so well that I adopt that portion of his

opinion:

"This rejection proviso in this statute has been held valid and effective to eliminate uninsured motorist coverage from the policy. American Liberty Ins. Co. v. Sanders, 120 Ga. App. 1.

"The quoted language[1] from the statute should be construed to make it effective and not render it nugatory (Kent v. State, 18 Ga. App. 30), giving it full force and effect (Mitchell et al. v. Union Bag and Paper Corp., 75 Ga. App. 15, 17), for it is not to be presumed that the legislature intended it to be without meaning (State Revenue Commission v. Alexander, 54 Ga. App. 295).

"The general purpose of a proviso is to except the clause covered by it from the general provisions of the statute in which it is contained. Georgia Railroad & Banking Company v. Smith et al., 128 U. S. 174, 32 LE 377.

"Uninsured motorist coverage may be limited to a specific automobile of a number of automobiles so far as other persons besides the named insured, the spouse and relatives of either are concerned Gulf American Fire & Cas. Co. v. McNeal 115 Ga. App. 286, 291, 292.

"Therefore, if full effect and meaning is given the language of the statute there is no reason why the named insured may not by his rejection eliminate himself from uninsured motorist coverage while occupying a specific motor vehicle despite the fact that he may be covered

---

[1]"Provided, however, that the coverage required under this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing: and Provided, further, that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." Code Ann. § 56-407.1 (a).

every place in the world except in that particular automobile. In the opinion of the Court this is the effect of plaintiff's rejection of August 10, 1968 of uninsured motorist coverage for the 1953 Plymouth automobile." (End of opinion of trial court.)

It should be noted that both the trial judge and my esteemed colleague cite *Gulf American Fire & Cas. Co. v. McNeal,* 115 Ga. App. 286 (154 SE2d 411) to support their respective positions despite their disagreement. This divergence of view undoubtedly arises by reason of the decision's third headnote,[2] which standing alone supports the position taken by Judge Deen. However, as was said in *Walker v. City of Cairo,* 31 Ga. App. 307 (2) (121 SE 138): "Where this court delivers an opinion with headnotes by the court, the headnotes are not to be considered alone as showing what is decided, but the headnotes and opinion are to be taken together." See also the caveat stated in *Lankford v. State Life Ins. Co.,* 57 Ga. App. 626, 634 (195 SE 907) in haec verba: "Standing alone the headnote might suggest that there is much merit in the contention of counsel. However, headnotes must be taken in connection with the opinion and the recitals of facts upon which the opinion is based."

Presiding Judge Bell made his position clear in prefacing the ratio decidendi of *Gulf American Fire & Cas. Co. v. McNeal,* 115 Ga. App. 286, 291, supra, with these words: *"Unless the uninsured motorists coverage is rejected by the insured."* (Emphasis supplied.) Thus, that opinion recognizes that the statement contained in

---

[2] In a perceptive article on the subject of headnotes written in 1960 by Savannah attorney Fred S. Clark as a law student appearing in 22 Ga. Bar Jour. 574, the young writer accurately predicted "there will be a not-too-distant era when headnotes will be looked upon as a historical oddity."

Headnote 3 is subject to the terms of the statute which explicitly states: "Provided, however, that the coverage required under this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing." Ga. L. 1971, pp. 926, 927, codified as § 56-407.1 (a).

Furthermore, *Gulf American Fire & Cas. Co. v. McNeal,* supra, is not controlling here for two factual reasons: (1) in that case this court recognized there was no express rejection of uninsured motorists as was done here and (2) there was only one policy for all three vehicles whereas here we have two separate contracts written for each vehicle with different coverages, varying commencement dates, and different premiums plus a specific written rejection of uninsured motorists coverage for that contract made to insure operations of the 1953 Plymouth.

Undoubtedly our lawmakers recognized the constitutional principle of freedom of contract by insertion of this rejection privilege. Casualty policyholders frequently decline available coverages because they do not wish to pay the extra premiums required to have collision or uninsured motorists coverage and even exclude youthful drivers of family cars because of the increased cost. It is generally known that with automobile liability insurance premiums steadily mounting that persons owning an old car and a new vehicle willingly pay the extra amounts required for all coverages on the newer automobile but forego extras for the old jalopy.

We should not lose sight of the automobile casualty insurance industry's practice of insuring specific automobiles, not persons. Such policies always identify the vehicle by brand name, type, and serial number. Incidental to insuring the operations of the described vehicle are additional policy provisions providing protection for the insured person when driving automobiles other than the specific vehicle that he

insures as well as other contractual coverages detailed therein.

A clarification of the fact with emphasis on dates and actions of Bass and State Farm confirms the trial judge to have been correct. On October 25, 1970, when the wreck occurred involving the 1953 Plymouth, Bass owned two automobiles, a 1953 Plymouth and a 1966 Pontiac, both of which were insured by State Farm but under two *separate* policies with differing dates, coverages and premiums which variations resulted in only one policy containing uninsured motorist coverage because of insured's express rejection thereof on the other contract. On August 10, 1968, he had applied for and obtained a public liability policy for his 1953 Plymouth at which time he in writing expressly rejected proffered uninsured motorist coverage for that vehicle. On August 27, 1969, he applied for and obtained a similar liability policy on his 1966 Pontiac but again with an express rejection of uninsured motorist coverage. Thereafter and illustrative of the intention of the parties in this case is the notification which State Farm sent Bass the following year, on August 27, 1970, in connection with renewal of the 1966 Pontiac policy. The notification letter contained the following items: a notice showing the total premium with a separate figure for the uninsured motorist coverage, amendatory endorsements for addition to the automobile policy on the 1966 Pontiac if Bass accepted such coverage, and a document entitled "Important Notice—Coverage U Endorsement." This last item was in compliance with our statute and explained in detail the uninsured motorist coverage. Among the phrases are "to make sure that you have had the opportunity to reconsider—we are again making Uninsured Motor Vehicle Coverage (Coverage U) a part of your policy effective with your current renewal date," and urged acceptance of this additional coverage. This notification directed that payment of the entire premium as

submitted would add this extra coverage automatically to the existing policy but that if the insured did not want such uninsured automobile coverage that it would be necessary for the insured to subtract the amount specified for such additional coverage from the premium billing and also to complete the notice of rejection which read as follows: "The undersigned, an insured named in the policy, hereby rejects the provisions covering damage caused by an uninsured motor vehicle under a policy of bodily injury liability insurance *on the following described car.*" (Emphasis added)

The record contains the express written rejection dated August 10, 1968, of uninsured motorist coverage on the 1953 Plymouth. Between August 10, 1968, the date of his written rejection, and October 5, 1970, the date of the collision with the uninsured automobile, there had been renewals of the policy covering the 1953 Plymouth with the insured failing to exercise his right as given in our statute to add uninsured motorist coverage for that specific vehicle. Of course, that would have required payment of the additional premium.

This case must be approached on the basis of the existence of two policies. Bass might well have had his two policies in two companies. Under such analogy it is readily recognized that State Farm and its insured could not by any contract which they might make between themselves bind another insurance company with which Bass had contracted for coverage with an express exclusion of the uninsured motorist on his older car and for which no premium was paid.

It is true that in those cases where two policies exist with both having the same uninsured motorist coverage then the coverage may be stacked. *State Farm Mut. Auto. Ins. Co. v. Murphy,* 226 Ga. 710 (177 SE2d 257). This is true whether insured has his policies in the same or separate companies because both policies carry such uninsured motorist coverage. In the case sub judice one

policy carried uninsured motorist coverage on one car but there was none on the vehicle involved in the wreck because of insured's specific written rejection in "the meeting of the minds" to make that contract.

Thought must also be given to the impact upon the public of a decision holding that a person owning more than one car need carry uninsured motorist coverage on only one of his cars as he and his family would automatically become beneficiary without payment of premiums for his other cars of such desirable coverage on his other automobiles, be they two, four, or more. This would be true even though he had in writing rejected such coverage for the other vehicles. Thus individuals owning more than one car would pass on to other policyholders the added costs of providing such important coverage without bearing his rightful share because insurance rates are determined by actuarial studies.

Above all other considerations we must note that any other holding would be in contradiction of the plain mandate of the statute which reads: "Provided, further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." (Code Ann. § 56-407.1 (a)).

"Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and in case of conflict between the policy and the statutory provisions, the latter control. *Employers Liability Assurance Co. v. Hunter,* 184 Ga. 196, 202 (190 SE 598)." *Nelson v. Southern Guaranty Ins. Co.,* 221 Ga. 804, 807 (147 SE2d 424).

In pursuance of the constitutional principle of freedom to contract the statute required the insured to have the opportunity to reject the coverage in writing "and provided further, unless the named insured requests such

coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." To hold that uninsured motorist coverage is imposed in this case would be directly in conflict with the quoted portion of our statute and violative of the contract made by the parties. We should not effect a new contract with retroactive impact on the subject matter after the loss has occurred. *Mutual Benefit Life Ins. Co. v. Ruse,* 8 Ga. 534, 545; *McGlothin v. U. S. Nat. Life &c. Co.,* 36 Ga. App. 325 (136 SE 535).

As this court said in *Parris & Sons v. Campbell,* 128 Ga. App. 256, "Nor do the courts have any more right or power, by construction, to extend the coverage of a policy or to make it more beneficial to the insured than they do to rewrite the contract and increase the coverage. *Prudential Ins. Co. v. Kellar,* 213 Ga. 453, 458 (99 SE2d 823); *Pilot Life Ins. Co. v. Morgan,* 94 Ga. App. 394, 399 (94 SE2d 765); *Southern Indemnity Co. v. Young,* 102 Ga. App. 914 (1) (117 SE2d 882); *Cotton States Mut. Ins. Co. v. Falls,* 114 Ga. App. 812, 814 (152 SE2d 811)." Also from *Parris & Son v. Campbell,* supra, "The parties are free to make their own contracts, within the prescribed bounds of law, and the courts are not authorized, by interpretation, to rewrite or to change them, or to extend the coverage. *McCullough v. Kirby,* 204 Ga. 733 (5) (51 SE2d 812); *West View Corp. v. Alston,* 208 Ga. 122, 127 (65 SE2d 406). This principle applies to insurance contracts. *Cato v. Aetna Life Ins. Co.,* 164 Ga. 392, 398 (138 SE2d 787); *Hartford Accident & Ind. Co. v. Hulsey,* 220 Ga. 240, 241 (133 SE2d 310)."

In short, we submit that in the exercise of the constitutional freedom to contract the legislature gave the insured the privilege of saving money if he did not want to take out this additional coverage that would protect him on uninsured motorists. That is, it was not

forced upon him if he did not want to pay the premium for the additional coverage on his older car. He exercised that freedom here and we have no right to rewrite his contract that he voluntarily made by forcing uninsured motorist coverage upon him which he did not want and for which he was not willing to pay the premium.

I concur with my colleague as to the other defenses being without merit but I submit there has not been shown such bad faith on the part of the insurer to warrant imposition of the statutory penalty and attorney fees under Code Ann. § 56-1206. Where there is a close question involving interpretation of policy provisions, such penalty and attorney fees are not authorized. *Brown v. Seaboard Lumber &c. Co.,* 221 Ga. 35, 36 (142 SE2d 842); *U. S. F. & G. Co. v. Woodward,* 118 Ga. App. 591 (2) (164 SE2d 878) and citations therein. See also *Interstate Life &c. Co. v. Williamson,* 220 Ga. 323 (138 SE2d 668), where our Supreme Court in answering our certified question denied such penalty despite the insurer initially lacking a defense which was later discovered after denial of liability. If there is a reasonable ground for making the defense, no penalty, damages or attorney's fees is authorized. *Gulf Life Ins. Co. v. Howard,* 110 Ga. App. 76 (3) (137 SE2d 749).

I am authorized to state that Presiding Judges Hall and Eberhardt concur in this dissent.