60098. NEW YORK LIFE INSURANCE COMPANY v. SCHNEIDER.

BIRDSONG, Judge.

Appellant-insurer's application for interlocutory appeal was granted to review the order of the trial court overruling its motion for summary judgment contesting coverage on a health and accident insurance policy issued to Mrs. Schneider on February 27, 1978. The insurance policy excluded from coverage for two years any pre-existing condition, which was defined as "a bodily injury, illness or disease, *or the symptoms thereof,* for which medical advice or treatment was recommended by, or received from, a physician, or which would cause an ordinarily prudent person to seek diagnosis, care or treatment, within the 5 year period immediately preceding the effective date of coverage for that person under the policy." (Emphasis supplied.) In paragraph 3 (h) of the application, Mrs. Schneider was required to answer whether she had ever consulted a physician or been treated for "epilepsy, convulsions, dizziness, loss of consciousness, frequent headaches or other nervous system disorder," and she checked the "no" box denying such treatment or consultation. Paragraph 6 (e) questioned whether, other than as stated, the applicant had within the past five years "consulted any physician or practitioner for any reason, including routine or checkup examination." Mrs. Schneider responded affirmatively and listed in the section which required "full details for each 'yes' answer" only that in July of 1977 she had been treated for a 40% loss of hearing in

her right ear. On March 26, 1978, Mrs. Schneider was admitted to the hospital for treatment of frequent headaches which, according to the hospital records, began in August, 1977, caused by a "benign pseudotumor cerebri." When her claim for medical expenses was refused, Mrs. Schneider sued and the insurer defended on the grounds that it had the right to rescind the insurance contract because she had made material misrepresentations in her application; or, in the alternative, that her hospitalization was for diagnosis and treatment of a pre-existing condition as defined in the policy, and thus specifically excluded from coverage.

In denying appellant's motion for summary judgment, the trial court stated, inter alia: "Mrs. Schneider has admitted to having been treated twice by Dr. J. E. Barfield, her family physician, for migraine headaches over a period of eleven months. [Appellant] argues that, since [Mrs. Schneider] did not mention these treatments in her application for insurance, it is entitled to rescind the contract. It argues that the failure of Mrs. Schneider to mention these treatments in her application constitutes a *material misrepresentation.* On the other hand [Mrs. Schneider] contends that the headaches were nothing out of the ordinary and that they were not 'frequent.'

"The second argument advanced by [appellant] is that the frequent headaches were a *pre-existing condition* and, hence, not covered under the terms of the policy. Mrs. Schneider was treated for a benign pseudotumor cerebri. . . This was the first time this particular condition was diagnosed. Under the terms of the policy, a pre-existing condition is one which has been diagnosed by a physician prior to the effective date of coverage and for which treatment is rendered subsequent thereto. . .

"The court agrees that [Mrs. Schneider] had a duty to fully and truthfully inform [appellant] as to her condition and she may have failed to do so. [Appellant] asks that this court, as a matter of law, treat this alleged failure to fully inform as being the requisite misrepresentation which would prevent [Mrs. Schneider] from recovering her expenses from [it]. This the court cannot do. . . Can the court state as a matter of law that Mrs. Schneider knew that she had a benign pseudotumor cerebri? Again, the answer must be in the negative. . . From the records before the court it is clear that while *symptoms* may have existed prior to the day on which the policy was to become effective, the advice and treatment for the condition was given after the date on which the insurance became effective." *Held:*

It is clear, as the quoted language from the policy shows, that a pre-existing condition includes the *symptoms* of an illness or disease for which medical advice was sought or received within five years prior to coverage, and that the policy does not require that the illness

or disease be diagnosed prior to coverage. Thus the trial court's erroneous construction of the policy was the basis for its finding that there was no pre-existing condition.

Under the policy if Mrs. Schneider's symptoms, i. e., frequent headaches, were treated prior to the date the policy went in effect, even though the condition (benign pseudotumor cerebri) was not diagnosed until after coverage began, the condition would be defined as pre-existing under the policy and not be covered. The policy required that she "give full details for each" consultation with "any physician or practitioner for any reason, including routine or checkup examination" within the past five years. Mrs. Schneider indicated only one treatment in 1977 for a 40% hearing loss in one ear. After filing her claim and bringing this action based upon it, however, she admitted in her response to appellant's request for admissions that she had in fact received treatment for headaches upon at least five separate occasions during the year preceding her insurance application. Although she subsequently averred in an affidavit filed in opposition to appellant's motion for summary judgment that "I did not complain to Dr. Garrison [an optometrist] that I had frequent headaches, but may have mentioned my eyes were giving me trouble," and that Dr. Deese (a chiropractor) gave her "routine spinal adjustments" to relieve tension and anxiety but not as a treatment for any particular symptoms, no attempt was made to explain why at least two other visits (on November 26, 1977 and January 17, 1978) to Dr. Barfield for treatment of headaches were not mentioned in the application for insurance.

Code Ann. § 56-2409 provides a defense where material misrepresentations are made on the application for insurance. " 'Whether misrepresentations are material is ordinarily a question for the jury; but where, as here, the evidence excludes every reasonable inference except that they were material, no issue is presented upon that point for determination by the jury.' " *New York Life Ins. Co. v. Hollis,* 177 Ga. 805, 807 (171 SE 288); see also *Prudential Ins. Co. v. Perry,* 121 Ga. App. 618 (174 SE2d 570) and cits. (pp. 626-627) for holdings that misrepresentation as to past medical attention is material as a matter of law. See also *Jefferson Standard Life Ins. Co. v. Bridges,* 147 Ga. App. 5 (248 SE2d 5).

This policy states on its face that unless all answers given in the application are "complete and true representations . . . of those matters inquired about," the policy shall not take effect. Since the policy also expressly included "symptoms" in the definition of a "pre-existing condition" which was required to be disclosed, these misrepresentations were material as a matter of law. For the foregoing reasons, it follows that the trial court erred in refusing to

rule that Mrs. Schneider's treatment was for a pre-existing condition as precluded in the policy, and that her failure fully to inform was a material misrepresentation preventing her from recovering her expenses from appellant. Accordingly, the denial of appellant's motion for summary judgment must be reversed.

Judgment reversed. *Quillian, P. J., Shulman and Sognier, JJ.,* concur. *Banke and Carley, JJ., concur in the judgment only. Deen, C. J., McMurray, P. J., and Smith, J., dissent.*

ARGUED JUNE 4, 1980 — DECIDED SEPTEMBER 19, 1980 —

*David R. Smith, W. Ward Newton,* for appellant.
*D. Duston Tapley, Jr.,* for appellee.

DEEN, Chief Judge, dissenting.

It is clear that appellee Mrs. Schneider's admissions and affidavit later filed are in conflict. The question is should that version of the matter most favorable or unfavorable to her be adopted. Many times the case of *Burnette Ford v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971) is erroneously cited as holding that "the testimony of a party offering himself as a witness in his own behalf is to be construed most strongly against him when it is contradictory, vague, or equivocal." Actually this is a quote from *Ryder v. Schreeder,* 224 Ga. 382 (162 SE2d 375) (1968), which is cited in *Burnette,* supra. The latter case is the antithesis of the former. The *Ryder* case seems to be the rule where both parties make motions for summary judgment. The *Burnette* rule appears applicable where only one party makes a motion for summary judgment and holds: " 'Where the evidence on motion for summary judgment is ambiguous or doubtful, the party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences and such evidence construed most favorably to the party opposing the motion. [Cit.]' "

The *Burnette* rule wherein only one summary judgment is involved has been modified by *Chambers v. C. & S. Nat. Bank,* 242 Ga. 498, 502 (249 SE2d 214) (1978). " '(A) party testifying in his own favor has no right to be intentionally or deliberately self-contradictory; and if he is so, the courts are fully justified in taking against him that version of his testimony which is most unfavorable to him.' [Cit.]" This latter case also dealing with summary judgment is adopted from *Western & A. R. Co. v. Evans,* 96 Ga. 481, 486 (23 SE 494) (1895), a case involving a verdict rendered by a jury. Judge Birdsong points out in his special concurrence in

*Combs v. Adair Mortgage Co.* 155 Ga. App. 432, 434 (1980), that the words "intentional" or "deliberate" are contained in the body of the opinion of *Evans,* supra, but not in the headnote. He states that the *ratio decidendi* is in the headnote. However, the headnote must yield to the opinion itself. *Deck v. Deck,*[1]193 Ga. 739, 745 (20 SE2d 1) (1942) citing many cases emphasizes that "the headnote to a case . . . is so far law only as it is sustained by the judgment of the court in the case." See also *Bass v. State Farm &c. Ins. Co.,* 128 Ga. App. 285, 294 (196 SE2d 485) (1973).

The Supreme Court held in *Combs v. Adair Mortgage Co.,* 245 Ga. 296, 297 (264 SE2d 226) (1980) "this court continues to adhere to the rule enunciated in *Burnette Ford, Inc. v. Hayes,* supra, and views the holding in *Chambers v. Citizens & Southern National Bank,* supra, as one which came about as a result of factual differences."

The case *sub judice* involves only one summary judgment. A review of the evidence contained in the record reveals that there was no indication that Mrs. Schneider intentionally or deliberately created a conflict in her testimony as the party responding to the motion for summary judgment in *Chambers,* supra. In fact Mrs. Schneider stated in her affidavit: "I had never visited or been treated by any other medical doctor other than Dr. Barfield who was listed on the application for insurance." She stated that she did not mention headaches to her optometrist which constituted a routine eye checkup. She also said that her visit to the chiropractor was for relieving tension and anxiety and not treatment for headaches. The real issue to be determined by a jury is whether or not, based on the evidence of two visits to a medical doctor who treated the applicant for headaches, can this court say as a matter of law that treatment for headaches on two different occasions be adjudicated "frequent headaches"? On a continuum of one to seven, one being "not frequent" and seven being "frequent," where on the continuum does "not frequent" stop and "frequent" begin? This is indubitably a question that can only be properly resolved by a jury.

There appears to be no limitation of authority of the agent on the application wherein the health questions were listed and which were signed by the applicant. In paragraph 4 of "Plaintiff's Admissions of Facts and Genuiness of Documents" it is apparent that applicant and insurance representative had an oral discussion as to the meaning of headaches. "Defendant understood question after discussing with

---

[1]Judge Clark's footnotes refer us to 22 Ga. Bar Journal 574 where "the young writer accurately predicted 'there will be a not-too-distant era when headnotes will be looked upon as an historical oddity.' "

insurance representative that this did not mean normal or everyday headaches. Her answer to defendant's question is that she has never had frequent headaches or any other nervous disorders." Knowledge of the agent is knowledge of the company. The agent telling Mrs. Schneider not to list or count certain type of headaches is the same as the company speaking unless the authority of the agent has been limited and the applicant has notice of this limitation. On the page signed by the applicant in response to the health questions and doctor's information there appears to be no limitation of authority on the agent.

"Absent a clear and unequivocal limitation on the authority of an agent of an insurance company, and absent fraud and collusion between the agent and the prospective insured, the actual knowledge of the agent of facts amounting to innocent misrepresentations in the application for insurance is imputed to the insurer, and the insurer will be estopped to assert that it would not have issued the policy if it had knowledge of the true facts." *Allstate Ins. Co. v. Anderson,* 121 Ga. App. 582 (2) (174 SE2d 591) (1970). See also *Reserve Life Ins. Co. v. Meeks,* 121 Ga. App. 592 (174 SE2d 585) (1970); *Chester v. State Farm &c. Ins. Co.,* 121 Ga. App. 599 (174 SE2d 582) (1970).

Without a limitation of authority of the agent stated in the application the act of the agent became the act of the insurer. The jury could find that the agent who was acting for the insurance company waived any other listing of "headaches" as distinguished from "frequent headaches," the latter of which being the only information sought on the application.

I would affirm. I am authorized to state that Presiding Judge McMurray and Judge Smith join in this dissent.