70224. BROCK et al. v. GUARANTY TRUST LIFE INSURANCE COMPANY.
(333 SE2d 158)

BEASLEY, Judge.

J. H. Brock, for himself and as next friend for his wife Connie, seeks to recover under an insurance policy issued by Guaranty Trust Life Insurance Company providing nursing home benefits to Connie Brock. Brock appeals from the judgment denying his motion for summary judgment and granting Guaranty Trust's motion for summary judgment.

Based in part on a CT brain scan done a year earlier, a neurologist diagnosed Mrs. Brock on April 2, 1981, as having Alzheimer's disease; she had been referred to the neurologist by the internist who had been treating her for high blood pressure. She was not told of the diagnosis. However, the neurologist explained and described to her husband and her sister, who had accompanied her, what the symptoms and manifestations of her condition would be and how it would develop and progress as time went on. There is a question of fact as to whether he expressly used the term "Alzheimer's disease" in his discussion with them.

On April 13 Mrs. Brock applied for nursing home insurance, indicated she had high blood pressure, and did not list the neurologist as a doctor she had consulted within the past five years. A policy was issued on April 29.

Eight months later, on December 30, Mrs. Brock became confined to a nursing home due to the Alzheimer's disease and remained there[1] except for two periods of hospitalization, the first for five days in January 1982 for urinary tract infection and the second for six days a month-and-a-half later in March, for recurrence of the urinary tract infection and dehydration. In each instance she was returned to the nursing home because of the Alzheimer's disease.

Plaintiff filed a claim for nursing home expenses about the time Mrs. Brock returned following the second hospitalization and, when defendant denied coverage, a demand letter was written. Suit was filed thereafter seeking recovery of scheduled daily payments ($30 per day beginning on the 101st day of confinement) plus medical expenses and bad faith penalties and attorney fees.

Both parties filed motions for summary judgment based on ad-

---

[1] At least through October 16, 1984, the date in the amendment to the complaint.

missions, the affidavits of the plaintiff and Mrs. Brock's sister and the Brocks' daughter, as well as depositions of the neurologist and a doctor treating her at the nursing home. After a hearing the trial court found that the confinement was the result of Alzheimer's disease which was manifested prior to the effective date of the policy. It concluded that the incontestability clause did not preclude the insurer from defending on the ground that the definition of covered "sickness" did not embrace Mrs. Brock's situation. It held that the manifestation before the effective date foreclosed any and all of the coverage claimed.

1. "Sickness," as relevant here, is defined in the policy as "a sickness, disease or disorder, first manifested 30 days or more after the Effective Date . . . we may exclude conditions by name or specific description.[2] This definition is subject to the Time Limit on Certain Defenses provision."

Insofar as pertinent here, the latter reads: "Is There A Time Limit On Any Of Our Defenses? . . . No claim for expense incurred after the two years [from the Effective Date] will be reduced or denied because of sickness or physical condition that existed before the Effective Date unless excluded by name or specific description."[3]

The trial court and the case upon which it relied, *Keaten v. Paul Revere Life Ins. Co.*, 648 F2d 299 (5th Cir. 1981), were unduly influenced by OCGA § 33-25-7 in reaching the conclusion that, as to accident and sickness insurance, an insurance company could still deny a claim even after the expiration of two years, on the ground it pre-existed the effective date of coverage.

First, that section is in the chapter on life insurance, and such policies are not required to include a provision comparable to OCGA § 33-29-3 (2) (B). Note the very words making express reference to a disease which existed prior to the effective date of the policy. Conspicuously absent from the chapter on accident and sickness insurance is any provision similar to OCGA § 33-25-7. Thus it does not apply to the policy in question.

Here, by any reasonable construction of the policy language mandated by the statutory authority, after two years and if not expressly excluded by the policy, a sickness which pre-existed the effective date is covered and may not be reduced or denied on that basis.

---

[2] The only conditions excluded are neurosis and mental disturbance.

[3] This and the omitted provision are apparently included to comply with OCGA § 33-29-3 (2) (A) which provides for a two-year time limit for voiding the policy based on misstatements, and OCGA § 33-29-3 (2) (B) which reads: "No claim for loss incurred or disability, as defined in the policy, commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss [had] existed prior to the effective date of coverage of this policy."

The reason advanced by the trial court for granting summary judgment for Guaranty Trust is not sustainable. While the nursing home expenses incurred for a pre-existing sickness within the first two years of the effective date of the policy would not be covered, the plain language of the contract would render the insurer liable for losses incurred after that period.

That is not the end of our review, however.

2. Guaranty Trust urges as another basis for summary judgment in its favor the failure of Mrs. Brock's situation to fit within the policy definition of "Confined or Confinement," which is "assigned to a bed in a Nursing Home on the advice of a physician. A charge for room and board must be made. The confinement must begin within 14 days of discharge from a hospital. The hospital stay must have been at least three days and as a result of the same injury or sickness." The record establishes that Mrs. Brock's confinement in the nursing home was at no time preceded by a period of hospitalization for Alzheimer's disease.

Plaintiff urges, without authority, that placing such a provision in a nursing care insurance contract is contrary to public policy. Whether we agree that this provision would not be desirable in a policy for one who wanted benefits to compensate for expenses of nursing home care is irrelevant. "The public policy of this state is created by our Constitution, laws and judicial decisions." *Wages v. State Farm &c. Ins. Co.*, 132 Ga. App. 79, 82 (208 SE2d 1) (1974), and cases therein cited. There is no established public policy impediment, by way of Constitution or statute or case law, to an insurer limiting the coverage only to those first hospitalized and then confined to the nursing home for the same sickness that necessitated the hospital care. If it were so declared in the laws, of course, they would control, as a statute of the State establishes public policy as to the matter embraced therein. *Lott v. Bd. of Education*, 164 Ga. 863, 866 (1) (139 SE 722) (1927); *Melton v. State*, 180 Ga. 104, 105 (178 SE 447) (1934). It would be up to the legislature in this instance to declare the public policy sought by plaintiff, as we do not believe it within the proper sphere of judicial policy-making but more appropriately within the realm of political decisions.

Plaintiff cannot show that the "confinement" requirement was met. Of course, on motion for summary judgment the burden is on defendant as the moving party to establish non-compliance rather than on plaintiff to show compliance. *Burnette Ford v. Hayes*, 227 Ga. 551, 552 (181 SE2d 866) (1971). This has been done here. Although the trial court did not consider that issue, the evidence and positions advanced by the parties are conclusive in that regard and mandate upholding the summary judgment for that reason. Where the judgment of the lower court is right for any reason, it will be af-

firmed. *Kitchens v. Winter Co. Bldrs.*, 161 Ga. App. 701, 703 (2) (289 SE2d 807) (1982); *Miller Grading Contractors v. Ga. Fed. Savings &c. Assn.*, 247 Ga. 730, 734 (279 SE2d 442) (1981).

*Judgment affirmed. Pope, J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

The writer concurs fully with what is said in the majority opinion. It may be appropriate to add that my concurrence is conditioned on the idea that what is said in the footnotes and opinion are to be taken together and not be to considered alone.

Twenty-five years ago the use of headnotes appeared to be the rule and footnotes the exception. Now the latter are in vogue, and the former almost "a historical oddity."[1] It is pertinent to suggest that the existing opinion-headnote rule should also apply to opinion-footnote[2] situations, such as in the instant case:

"Where this court delivers an opinion with headnotes by the court, the headnotes are not to be considered alone as showing what is decided, but the headnotes and opinion are to be taken together." *Walker v. City of Cairo*, 31 Ga. App. 307 (2) (121 SE 138) (1923). "Standing alone, the headnote might suggest that there is much merit in the contention of counsel. However, headnotes must be taken in connection with the opinion and the recitals of facts upon which the opinion is based, . . . " *Lankford v. State Life Ins. Co.*, 57 Ga. App. 626, 634 (195 SE 907) (1938). The headnote rule must likewise apply to footnotes as well as endnotes.

DECIDED JUNE 28, 1985.

*William Morgan Akin*, for appellants.
*Thomas E. Greer*, for appellee.

---

[1] Fred S. Clark, "Judicial Decisions — Headnotes," 22 Ga. Bar J. 574; see *Bass v. State Farm Mut. Auto. Ins. Co.*, 128 Ga. App. 285, 294 (196 SE2d 485) (1973). (Perceptive predictive prophetic pronouncement presages.) Others have noted that today's footnote may become tomorrow's headline.

[2] See *Wright v. MARTA*, 248 Ga. 372 (283 SE2d 466) (1981), where nine footnotes are used; and *Waters v. State*, 248 Ga. 355 (283 SE2d 238) (1981), where there are seventeen footnotes.