**AMICA MUTUAL INSURANCE COMPANY, Plaintiff–Counter–Defendant, Appellee,**

v.

**Leo P. BOURGAULT, Cheryl Bourgault, Defendants–Counter–Claimants, Appellants.**

No. 92–8068.

United States Court of Appeals, Eleventh Circuit.

Dec. 10, 1992.

Ervin H. Gerson, Stevens & Gerson, Atlanta, Ga., for defendants-counter-claimants, appellants.

Alan Terry Sorrells, Christopher N. Shuman, Carter & Ansley, Atlanta, Ga., for plaintiff-counter-defendant, appellee.

Before TJOFLAT, Chief Judge, HATCHETT and BIRCH, Circuit Judges.

BIRCH, Circuit Judge:
CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV OF THE GEORGIA CONSTITUTION. TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES OF THAT COURT:

## I. STYLE OF THE CASE

The style of the case in which this certification is made is as follows: Amica Mutual Insurance Company, plaintiff-appellee, versus Leo P. Bourgault and Cheryl A. Bourgault, defendants-appellants, case number 92–8068, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States Court for the Northern District of Georgia.

## II. FACTS

On March 16, 1990, the appellant, Cheryl A. Bourgault, was involved in a collision with a vehicle driven by Pamela O'Neal. Bourgault sustained injuries and incurred medical expenses of over $300,000. O'Neal had liability coverage in the amount of $15,000 per person/$30,000 per accident, and Bourgault recovered the $15,000 limit from O'Neal's insurance company. Bourgault then turned to her own insurance company to recover payment through the uninsured/underinsured provisions of her own insurance policies.

At the time of the collision, Bourgault and her husband, Leo, had purchased two insurance policies from the appellee, Amica Mutual Insurance Company ("Amica"). The first policy, numbered 910210–2039 (the "Georgia policy"), covered two vehicles principally garaged and operated in Georgia, including the vehicle Bourgault was driving when she collided with O'Neal. This policy provided uninsured/underinsured coverage of $100,000 per accident. Under this policy, Amica has paid the Bourgaults $85,000, representing the $100,000 coverage less the $15,000 payment from O'Neal. The Bourgaults raise no issues with respect to the coverage of the Georgia policy.

The second policy, numbered 910231–2093 (the "New York policy"), covered three vehicles registered and principally garaged and operated in New York and was in effect from February 1, 1990 to February 1, 1991. This policy was written by a New York branch office of Amica, using New York forms, and based on New York rates. However, the Bourgaults purchased the policy as residents of Georgia, and the policy was delivered to them in Georgia. The New York policy provided uninsured/underinsured coverage of $50,000 per "accident". This policy also contained an exclusion limiting uninsured/underinsured coverage which read as follows:

INSURING AGREEMENT

A. We will pay damages which an *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of *bodily injury:*

1. Sustained by an insured; and

2. Caused by an accident....

B. 'Insured': as used in this Part means:

1. You or any *family* member.

2. Any other person *occupying your covered auto.*.

3. Any person for damages that person is entitled to recover because of *bodily injury* to which this coverage applies sustained by a person described in 1. or 2. above.

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for *bodily injury* sustained by any person:

1. While *occupying*, or when struck by, any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy.

R1–7–Attachment 2–5–6. *See also*, R1–7–Attachment 2–Underinsured Motorist Coverage–1 (containing same language for underinsured coverage).

Following the collision, the Bourgaults sought to recover $50,000 under the New York policy. Amica contested the claim and brought a declaratory judgment action against the Bourgaults denying liability based upon the uninsured/underinsured exclusion provisions of the New York policy. Amica argued that the exclusion contained in the New York policy prevented Bourgault from recovering because Bourgault was occupying a vehicle which was not insured under the New York policy when she was hit. The Bourgaults defended by arguing that O.C.G.A. § 33–7–11(a)(1) prevented the application of the exclusion provision.[1] Therefore, the Bourgaults argued, they should be able to "stack" the New York policy on top of the Georgia policy and recover the additional $50,000 under the New York policy.

The district court held that O.C.G.A. § 33–7–11(a)(1) did not apply to the facts of this case and granted summary judgment for Amica.

III. REASONS FOR CERTIFICATION

This case focuses on O.C.G.A. § 33–7–11(a)(1) and its application to insurance policies covering vehicles not principally garaged or used in Georgia. In interpreting this section, the Georgia Supreme Court has stated:

The focus of this requirement for coverage is on the owner or operator of a vehicle causing damages to the insured. The coverage attaches to the insured regardless of his location. He need not be in the insured automobile. The only requirement is that he be an insured who is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle. An exclusion which would avoid coverage if the insured is occupying a noncovered motor vehicle furnished for his regular use conflicts with this requirement.

*Doe v. Rampley*, 256 Ga. 575, 351 S.E.2d 205, 206 (1987). The Georgia courts have relied on § 33–7–11(a)(1) to invalidate exclusions which have attempted to prevent uninsured/underinsured recovery when the insured was injured in a vehicle that was not covered by the insurance policy which contained the uninsured/underinsured coverage. *See State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710, 177 S.E.2d 257, 260 (1970); *Bass v. State Farm Mut. Auto. Ins. Co.*, 128 Ga.App. 285, 196 S.E.2d 485, 490 (1973).

These decisions have allowed insureds to "stack" uninsured/underinsured coverage by recovering first from the policy covering the vehicle in which the insured was injured and then from the policy in the insured's name but not covering the vehicle in which the insured was injured. The Bourgaults point to these decisions in support of their argument that the New York policy exclusion should be invalidated, allowing recovery of the $50,000.

Amica responds to the Bourgaults' argument by pointing to the language of § 33–

---

1. O.C.G.A. § 33–7–11(a)(1) states:

No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle....

7–11(a)(1) and its legislative history. Prior to 1981, § 33–7–11(a)(1) read:

> No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State, upon any motor vehicle then principally garaged or principally used in this State, unless it contains. . . ."

1978 Ga.Laws 1895, 1896.

In 1981, the statute was amended as part of the change from the Code of Georgia Annotated to the Official Code of Georgia. Deletions of commas and other stylistic changes were made throughout the code, including, in § 33–7–11, the deletion of the commas surrounding the phrase "or shall be issued or delivered by any insurer licensed in this State". At the time of the changes, the Code Revision Committee stated that "every effort was made to avoid changes in the substance of the law." O.C.G.A. Vol. 1, at xi (Forward by the Code Revision Committee).

Amica argues that the statute should be read in its pre-1981 form. Under this reading, Amica argues that § 33–7–11 applies only to insurance policies issued to persons in Georgia on vehicles principally garaged or used in Georgia. Thus, the exclusion in the New York policy would not be invalid because the vehicles under that policy were principally garaged and used in New York.

Amica also argues that interpreting § 33–7–11 in this manner is consistent with the statute's purpose, to ensure that all vehicles registered and principally used in Georgia are insured in accordance with

Georgia law. Furthermore, such a interpretation would be consistent with the now prevailing system in which each state may adopt individual insurance regulations.

Both arguments appear to have merit. However, we can find no Georgia decision applying § 33–7–11 to an insurance policy covering vehicles not principally garaged or registered in Georgia. Furthermore, the resolution of this case is likely to affect numerous individual insurance holders and insurance companies. We, therefore, respectfully certify the following question of law to the Georgia Supreme Court and the Honorable Justices of that Court.

## IV. QUESTION FOR CERTIFICATION

WHETHER, WITH RESPECT TO A AUTOMOBILE INSURANCE POLICY WHICH COVERS VEHICLES PRINCIPALLY GARAGED AND USED IN ANOTHER STATE BUT WHICH IS SOLD AND DELIVERED TO A RESIDENT OF GEORGIA, O.C.G.A. § 33–7–11 ACTS TO INVALIDATE AN UNDERINSURED COVERAGE EXCLUSION WHICH ATTEMPTS TO LIMIT COVERAGE BECAUSE THE INSURED WAS INJURED IN A VEHICLE NOT COVERED BY THE POLICY.

Our statement of this question is not intended to limit the inquiry of the Georgia Supreme Court. In answering the certified question, the Georgia Supreme Court should not feel constrained by the particular phrasing of the question.[2] Instead, the Supreme Court is at liberty to consider the problems and issues involved in this case as

---

2. Indeed, we requested that the parties stipulate to the certification question, but they were unable to do so. Each side submitted a question which we include for the Georgia Supreme Court's reference.

Bourgaults':
Whether an insurer may exclude uninsured/underinsured motorist coverage so as to preclude stacking of uninsured motorist benefits under circumstances where a named insured is injured in Georgia through the negligence of an underinsured motorist but at a time when a named insured is occupying a motor vehicle furnished for her regular use and it is not a vehicle insured under the policy and the policy was issued or delivered

to the named insureds in Georgia insuring vehicles owned by a named insured, but principally garaged in the state of New York.
Amica's:
Does O.C.G.A. § 33–7–11 purport to require a policy issued in New York pursuant to New York law, on New York forms, based on New York rates, renewing coverage on automobiles registered and principally garaged and used in New York, but which policy is mailed to the insurer's Georgia address, to provide uninsured motorist coverage to that insured who is injured in Georgia while occupying another owned vehicle insured under a separate Georgia policy.

it perceives them to be. In order to assist the Supreme Court, the entire record in this case, and copies of the briefs of the parties, are transmitted herewith.

QUESTION CERTIFIED.