## 47022.  STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. JOHNSON et al.

CLARK, Judge. This appeal arises in a declaratory judgment action by State Farm Mutual Automobile Insurance Company against its insured, the wife of the insured, and an uninsured motorist.

Tort suits had been instituted by the insured (Billie Phillip Stanford) and his wife (Freeda Louise Stanford) against the uninsured motorist (Joe Willie Johnson) for injuries received in an intersectional collision between a Fiat automobile driven by the insured in which his spouse was a passenger and a vehicle driven by Johnson on which there was no public liability insurance. This accident occurred on October 6, 1968, one day after the purchase of the Fiat by the insured.

On that day there were in existence two policies issued by State Farm to Stanford, one covering a Volkswagen sedan and the other covering a Taunus station wagon.

Both policies contained the same provisions which included the following pertinent language dealing with a newly acquired automobile: "Newly Acquired Automobile— means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if (1) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (2) the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile. If more than one policy issued by the company could be applied to such automobile the named insured shall elect which policy shall apply. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

On the date of the accident the Fiat was not covered by insurance but acting under the quoted terms of the two

policies insured timely notified State Farm that he wished coverage of his newly acquired automobile under the policy which already covered the Taunus. State Farm then issued its binder. Thereafter a third policy was delivered to cover the Fiat. Thus, in accordance with the insuring agreement in the Taunus policy, coverage thereunder was retroactively extended for the accident of October 6, 1968.

All three liability policies contained the usual medical reimbursement coverage as well as uninsured motorist coverage. Each policy stated the medical reimbursement coverage was limited to $5,000 for medical expenses incurred for each person.

The uninsured automobile coverage for each policy was in conformity with the Georgia Automobile Financial Responsibility Act, the pertinent portion of which at that time[1] required the insurer to agree ". . . [T]o pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle within the limits exclusive of interests and costs which shall be no less than $10,000 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, and $20,000 because of bodily injury to or death of two or more persons in any one accident. . ." (Ga. L. 1964, p. 306)

All three policies contained a provision in the Uninsured Motorists Clause whereby State Farm was permitted to deduct payments made under the medical reimbursement provisions from the amounts due under the uninsured motorist portion.

State Farm contends its liability for uninsured motorist coverage is limited to $10,000 for one person and that it is permitted by the express terms of its policy to de-

[1] In 1971 the General Assembly (Ga. L. 1971, p. 926) amended the statute to give an election to insured for an increased coverage on uninsured motorists if desired.

duct the amounts of $5,000 paid to the wife and $716.37 paid to the husband as an offset against the uninsured motorist coverage.

The insured and his wife contend the Georgia statute for uninsured motorists insurance does not permit such setoff of medical payment coverage so that this setoff provision is illegal. Furthermore, they contend there is a total of $30,000 liability coverage for each and a total of $15,000 medical payment coverage for each by reason of there being three separate policies. Both State Farm and the Stanfords filed motions for summary judgment.

The scholarly trial judge, Honorable W. Colbert Hawkins, ruled against State Farm and for the Stanfords. His written order from which State Farm has brought this appeal states that the provision in each policy permitting setoff for medicals against payments required under the uninsured motorist clause was void for the reasons stated in *State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710 (177 SE2d 257), and additionally that such provision conflicted with our uninsured motorist statute. He further ruled that "pyramiding of coverage should be allowed under all three policies, both as to the medical payments and as to recovery against the uninsured motorist."

The questions for this court to determine are: 1. Does State Farm have the right as stated in its policies to deduct from amounts payable under the uninsured motorist coverage sums paid under the medical reimbursement coverage? 2. Does the medical reimbursement coverage "stack" by reason of these being multiple policies? 3. Does the uninsured motorist coverage "stack" because of the multiple policies? 4. If we hold pyramiding existed, then is the "stacking" confined to the two policies which were in existence on the date of the accident or to three policies? *Held:*

1. The first three questions have been answered adversely to State Farm in the opinion rendered on March 10, 1972, by Judge Quillian with concurrence of Judges Jor-

dan and Evans in *State Farm Mut. Auto. Ins. Co. v. Harper,* 125 Ga. App. 696 (188 SE2d 813). That opinion relied on the authority of *Travelers Indem. Co. v. Williams,* 119 Ga. App. 414 (167 SE2d 174), and *State Farm Mut. Auto. Ins. Co. v. Murphy,* 226 Ga. 710, supra, to hold that the insured was entitled to "stack" the uninsured motorist coverages where there was more than one policy but limited to the actual loss.

Judge Quillian's opinion further held that sums paid under medical reimbursement provisions could not be used to reduce the amounts owed for uninsured motorist coverage and cited in support thereof Phillips v. State Farm Mut. Auto. Ins. Co., 437 F2d 365. In that decision our fellow Georgian, Judge Griffin B. Bell of our Fifth Circuit, had considered the cases from other jurisdictions which had ruled both ways on such policy provisions under statutes similar to Georgia. This split of authority is confirmed by the annotation in 24 ALR3d 1353. Judge Bell presciently prognosticated the Georgia Court of Appeals would rule under our statute that it would be a violation thereof to use payments made under the medical reimbursement portion for reduction of the statutory payments provided to the insured under the Georgia Automobile Financial Responsibility Act.

A point raised by State Farm's able counsel in this case which was not presented in the *Harper* case was a representation through an affidavit by the company's actuary that the company was enabled to provide its insurance at a lower cost to the insured by means of this agreement in the policy for reduction of the amounts which the company would otherwise have to pay under its uninsured motorist clause. This actuarial contention does not alter the situation because such agreement is contrary to our statutory enactment. As was said in the unanimous opinion of our Supreme Court concerning a policy containing a provision dealing with "other insurance" in the *Murphy* case, supra, at page 713: "The plain mandate of the statute is to provide payment for 'all sums' which the

insured is 'legally entitled to recover as damages from the uninsured motorist.' The statute is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is the beneficiary. Since the 'other insurance' policy provision seeks to limit the coverage to those sums which are in excess of other insurance, it is contrary to the statute and therefore of no effect, and was properly ordered stricken from the policies in question."

This same rule was applied by this court to declare void an arbitration clause in an uninsured motorist policy in *Gulf American Fire & Cas. Co. v. McNeal,* 115 Ga. App. 286 (154 SE2d 411), Chief Judge Bell stating at page 292, that "Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which the statute is applicable, and in case of conflict between the policy and the statutory provisions, the latter control. *Nelson v. Southern Guaranty Ins. Co.,* 221 Ga. 704, 807 (147 SE2d 424)."

2. Our answer to the fourth and remaining question as to whether the pyramiding of coverages applies to two or three policies is that the situation here limits the "stacking" to only two policies. The basic consideration in any contractual dispute is the intention of the parties. The parties here intended to possess and provide coverages limited to two contracts, not three.

The existing two policies expressly state that "if more than one policy issued by the company could be applied to such automobile *the named insured shall elect which policy shall apply.*" (Emphasis supplied.) In the factual stipulation filed in the trial court the parties agree "that subsequent to the day of the accident defendant Billie Phillip Stanford elected and did apply for coverage on his then existing policy, No. 271 287-A07-11" which covered the Taunus. Assured's affidavit at page 58 of the record says he ". . . applied for coverage on the Fiat automobile under his then existing policy." Assured did not apply for three coverages.

It does not require omniscient hindsight (referred to in the vernacular as "Monday morning quarterbacking") to recognize a liability insurance carrier would have declined to cover the newly acquired automobile if the insured had applied for a new policy and three coverages because the Fiat had already been involved in the accident of October 6, 1968. Obviously State Farm assumed coverage only because it was required to do so under the provisions of the existing two policies which gave its insured the election to choose to tack the newly acquired car for coverage under either but only under one policy. The binder it issued was an "add on" to the Taunus policy for which additional protection assured had agreed to pay a proper premium. The subsequent issuance of a third policy in conformity with the existing agreement because of State Farm's custom of delivering policies for each insured vehicle separately was not for a new consideration and did not provide a "stacking." It was similar to the situation in *Doerpinghaus v. Allstate Ins. Co.*, 124 Ga. App. 627 (185 SE2d 615) where coverage was provided through "insurance extension certificates" for each vehicle but only as a part of one policy.

In ruling that the "stacking" is limited to two policies, we are only conforming to the intentions of insurer and insured in that the policy contracts provided for addition of the newly acquired car to either one (not both) of the policies which were in existence at the time of the accident.

To provide a third medical reimbursement and a third uninsured motorists coverage would be in clear contravention of the intentions of the parties as expressed in the written instruments binding upon both insurer and insured.

*Judgment affirmed in part; reversed in part. Eberhardt, P. J., and Deen J., concur.*

Argued March 9, 1972—Decided April 5, 1972.

*Miller, Beckmann & Simpson, Luhr G. C. Beckmann, Jr.,* for appellant.

*Pierce, Ranitz, Lee, Berry & Mahoney, John M. Ranitz, Jr., Morton G. Forbes,* for appellees.