A94A0935. NORTHBROOK PROPERTY & CASUALTY INSURANCE COMPANY v. MERCHANT et al.
(450 SE2d 425)

BLACKBURN, Judge.

We granted the interlocutory application of Northbrook Property & Casualty Insurance Company, automobile liability and workers' compensation insurance carrier for Norman W. Fries, Inc. d/b/a Claxton Poultry Company ("Claxton"), in this consolidated action to determine Northbrook's liability for the payment of uninsured motorist

benefits for injuries received by four of Claxton's employees while standing near insured vehicles during a motor vehicle collision.

The record viewed in the light most favorable to the nonmovants shows that Northbrook issued a business automobile policy to Claxton for the policy period of October 1, 1990, to October 1, 1991, and the named insureds under the policy were Claxton Poultry Company, Claxton Poultry Farms, and Norman W. Fries, individually. In addition to the named insureds and Fries' family members, the policy provided that the definition of an insured also includes "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" For uninsured motorist purposes, "'[o]ccupying' means in, upon, getting in, on, out or off."

On March 19, 1991, appellees Larry Merchant, Michael Lynn, Tommy Cox, and Jesse Roberson, all employees of Claxton, were dispatched by Claxton to a highway to assist in the transfer of feed from a tractor trailer bound for Claxton to one of Claxton's tractor trailers, and drove an insured pickup truck and an insured tractor trailer to the location. While assisting with the transfer of feed using an auger attached to the inoperable vehicle and the insured tractor trailer, the men were injured when an intoxicated driver struck the pickup truck which was parked adjacent to the inoperable tractor trailer for the purpose of illuminating the area. As a result, the pickup truck propelled forward and struck Merchant, Lynn, Cox, and Roberson who were either standing or kneeling at the rear of the truck. Because their injuries arose out of and in the course of their employment with Claxton, Northbrook paid Cox, Merchant, Roberson, and Lynn workers' compensation benefits.

1. Northbrook initially asserts that the trial court erred in denying their motion for summary judgment because the employees were not occupying the insured vehicle at the time of the collision. Although the language of the uninsured motorist portion of the policy at issue requires that an individual occupy the covered vehicle for uninsured motorist protection, this provision is in conflict with statutory law. OCGA § 33-7-11 (b) (1) specifically provides that insured persons includes "any person who uses, with the expressed or implied consent of the named insured, the motor vehicle to which the policy applies. . . ." As we stated in *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3, 4 (1) (230 SE2d 70) (1976), "[w]here there is a conflict in an insurance policy and the uninsured motorist statute, the statute controls." (Citations omitted.)

Accordingly, our inquiry must focus on whether the employees were using the insured vehicle at the time that they were injured. This court has adopted a liberal definition of the term "use." See *Ivey v. First of Ga. Ins. Co.*, 209 Ga. App. 784 (434 SE2d 556) (1993). "Exact definition of the term 'use' is elusive, and is not capable of a defi-

nition which will leave everyone 'comfortable.' Whether or not an injury arose from the 'use' of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case. In this setting the term does not imply 'remoteness,' but does extend beyond actual physical contact. And it would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and particularly when it is still being 'utilized.' " (Citations and punctuation omitted.) *Booker,* supra at 4-5.

In examining the use of the insured vehicle, we must look at the contemplation of the parties in entering into this contract. See id. The contract provides that the vehicle in issue would be used in the business of poultry processing. Hence, it is reasonable to conclude that the vehicle would be used to transport items involved in the processing of poultry and that the vehicles would be loaded and unloaded. Consequently, "[t]he hazards an employee exposes himself to in venturing upon the highway when using the truck for purposes of [transporting commodities] is a situation which the [Uninsured Motorist] Act was designed to cover." (Citations and punctuation omitted.) Id. at 7. Therefore, we cannot say as a matter of law that Cox, Roberson, Merchant, and Lynn were not insureds as defined by OCGA § 33-7-11 (b) (1). Accordingly, the trial court did not err in denying the motion for summary judgment.

2. Next, Northbrook maintains that even if the injured employees were insured under the policy, it is entitled to a setoff for the workers' compensation benefits that it has paid for these injuries. In asserting this argument, Northbrook relies upon a provision in the policy which provides that "any amount paid under this insurance for medical expenses, work loss or 'survivor's loss' will be reduced by the amount of benefits an 'insured' is entitled to receive for the same elements of loss under any workers' compensation law."

Georgia's legislature and appellate courts have not addressed an insurer's liability for the payment of uninsured motorist benefits to be offset by an individual's entitlement to workers' compensation benefits. However, in *Dacosta v. Allstate Ins. Co.,* 188 Ga. App. 10 (372 SE2d 7) (1988), we held that the enforcement of a Tennessee statute which provided for a setoff of uninsured motorist benefits based upon the payment of workers' compensation benefits would not frustrate our State's public policy. In *Dacosta,* we recognized that the legislature's purpose in enacting Georgia's uninsured motorist statute was to protect insureds as to actual losses.

"A policy of insurance which, when construed reasonably and in its entirety, unambiguously and lawfully limits the insurer's liability, cannot be extended beyond what is fairly within its plain terms." (Citations and punctuation omitted.) *Cincinnati Ins. Co. v. Westbrook,*

188 Ga. App. 511, 513 (2) (373 SE2d 386) (1988). The unambiguous terms of the policy at issue provide for the offset of uninsured motorist benefits based upon the workers' compensation benefits to which the insureds are entitled, and this limitation in liability is not precluded by statute or contrary to the public policy of this State. Accordingly, the trial court erred in denying Northbrook's motion for summary judgment on this issue. Since the record in this case does not establish with certainty the amount of workers' compensation benefits Northbrook paid to these employees, it is necessary for the trial court to conduct further proceedings consistent with this holding.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 26, 1994 —
RECONSIDERATIONS DENIED NOVEMBER 21, 1994 —

*Adams & Ellis, George L. Lewis,* for appellant.

*Brennan, Harris & Rominger, G. Mason White, Lissner, Killian, Cunningham & Boyd, Robert P. Killian, Franklin, Taulbee, Rushing & Bunce, Keith A. McIntyre, Dubberly & McGovern, Joseph D. McGovern,* for appellees.