A96A1961. CNL INSURANCE AMERICA v. MORELAND.
(485 SE2d 515)

BLACKBURN, Judge.

CNL Insurance America appeals the trial court's denial of its post-judgment motion for offset. The issue in this appeal is whether the non-duplication of benefits provision in CNL's insurance policy is enforceable and allows CNL the right in this uninsured motorist claim to reduce the jury's verdict by the amount of payments previously made to the plaintiff. CNL's insurance policy was not made a part of the record at the trial court and is not in the record before us. There was no appropriate substitution for the policy's submission made to the trial court.

It is well settled that the burden on appeal is on the appellant to show error by the record. When a portion of the evidence bearing upon the issues before the trial court was not filed in the trial court and not made a part of the record on appeal, this Court may not consider such material. See *Burks v. First Union Mtg. Corp.*, 209 Ga. App. 41, 42 (432 SE2d 822) (1993).

CNL's attempt to supplement the record by attaching a copy of one and one-half pages of the purported policy in issue to its appellate brief is not sufficient. "[T]he burden is on him who asserts error to show it affirmatively by the record. A brief cannot be used in lieu of the record for adding evidence." (Citation and punctuation omitted.) Id. See also *Graham v. Ault*, 266 Ga. 367 (2) (466 SE2d 213) (1996) (appellate court cannot consider facts which do not appear in the record sent from the trial court); *Bertone v. Wilkinson*, 213 Ga. App. 255, 257 (444 SE2d 576) (1994) (court cannot consider pleading attached to brief); *Stolle v. State Farm Mut. Auto. Ins. Co.*, 206 Ga. App. 235, 236 (2) (424 SE2d 807) (1992) (" '[a] brief or an attachment thereto cannot be used as a procedural vehicle for adding evidence to the record. We must take our evidence from the record and not from the brief of either party' "). Factual assertions in briefs are not evidence and may not support a ruling by this Court. See *Bates v. Guaranty Nat. Ins. Co.*, 223 Ga. App. 11, 15 (476 SE2d 797) (1996) (" '[t]he appellate courts simply cannot, and are not authorized by law, to infer from statements of counsel in their briefs, facts which never managed an introduction into or even a nodding acquaintance with the record' ").

The dissent's reliance on *Bentley-Kessinger, Inc. v. Jones*, 186 Ga. App. 466 (367 SE2d 317) (1988) is misplaced as that case is distinguishable. In *Bentley-Kessinger*, the Court interpreted a provision in a lease document that was not in the record; however, therein the parties agreed as to the wording of the provision in issue *and* the trial court made specific findings regarding what was authorized by the lease agreement. In the present case, the trial court made no such findings and, neither its order denying CNL's motion for set-off nor the policy in question is part of the appellate record.

As the record contains no evidence of the provisions in CNL's policy, we must affirm the trial court.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Johnson and Ruffin, JJ., concur. Smith, J., concurs specially. Beasley, J., dissents.*

SMITH, Judge, concurring specially.

I concur fully in the majority, but write to note a distinction overlooked by the dissent between this decision and such cases as *City of Buchanan v. Pope*, 222 Ga. App. 716, 722, n. 4 (476 SE2d 53) (1996). While in *Pope* the appellant assented by silence to the City's *factual* assertions that no disparate treatment or purposeful discrimination had occurred, the parties cannot assent to an issue of *law* such as the interpretation of an insurance contract which is not included in the record. See generally *Thogerson v. State*, 224 Ga. App.

76, n. 1 (479 SE2d 463) (1996) (mere statement of opinion as to legal effect of document not binding admission).

BEASLEY, Judge, dissenting.

The record shows that Moreland was injured in a collision with a car driven by Ford, for which a jury awarded $6,143.40 in medical expenses, $4,400 for lost earnings, and $3,750 for pain and suffering. Ford was uninsured, so the trial court ordered CNL to pay the full amount of the judgment. CNL had been served as Moreland's uninsured motorist carrier and answered in its own name. Moreland was a named insured in his father's policy, which has uninsured motorist limits of $15,000.

Moreland's employer and group insurance carrier, Southwire, paid medical expenses and reimbursed him for lost wages. CNL urges that it is entitled to set off these amounts in accordance with the subrogation provisions in its policy: "The limit of liability shall be reduced by all sums: 1. Paid because of the 'bodily injury' or 'property damage' by or on behalf of persons or organizations who may be legally responsible . . .; and 2. Paid or payable because of the 'bodily injury' under any of the following or similar law: (a) Workers' compensation law; or (b) Disability benefits law. . . . No one will be entitled to receive duplicate payments for the same elements of loss."

Although the policy itself is not in the record, CNL quoted this portion of the policy in its motion to set off the verdict. In his response, Moreland accepted the quotation as the policy clause at issue. Moreland does not dispute this language is in the CNL policy but instead argues that "the insurer cannot restrict this coverage with an 'other insurance' clause such as the one in appellant's policy." By this statement, as well as by the substance of his argument, Moreland affirmatively acknowledges the content of the clause. Consequently, appellee Moreland "consent[s] to a decision based on the appellant's statement [of facts]." Court of Appeals Rule 27 (b) (1).

That rule, or its predecessor Court of Appeals Rule 15 (b), has been applied to establish the underlying facts and reach the merits in the following cases, among others: *City of Buchanan v. Pope*, 222 Ga. App. 716, 722, n. 4 (476 SE2d 53) (1996); *Biven Software v. Newman*, 222 Ga. App. 112, 115 (1) (473 SE2d 527) (1996); *Ward v. Pembroke State Bank*, 212 Ga. App. 322, n. 1 (441 SE2d 691) (1994); *Patterson v. Lauderback*, 211 Ga. App. 891, 895 (3) (440 SE2d 673) (1994), overruled on unrelated grounds, *Warren v. Ballard*, 266 Ga. 408, 410 (2) (467 SE2d 891) (1996); *Bentley-Kessinger, Inc. v. Jones*, 186 Ga. App. 466 (367 SE2d 317) (1988); *Riley v. State*, 180 Ga. App. 409, 410 (349 SE2d 274) (1986); *Whisnant v. State*, 178 Ga. App. 742, 743 (1) (344 SE2d 536) (1986); *Hiley v. McGoogan*, 177 Ga. App. 809, 811, n. 1 (341 SE2d 461) (1986); and *Ron Eason Enterprises v. McColgan*, 151

Ga. App. 106 (1) (258 SE2d 761) (1979).

In *City of Buchanan,* we said, "By failing to respond to the [appellant's] factual assertions in this regard, [appellee] has consented to their accuracy." Id. at 722, n. 4. In *Ward,* we said, "Although the security deed is not contained in the record, defendant states that the security deed contained an 'open-end' clause and plaintiff has not disputed that statement. Accordingly, we may accept this statement as being prima facie true." Id. at 322, n. 1. I have not found a case where the rule was construed to mean, as it is now, that not only must appellant's statement of facts not be controverted but also the trial court must have made those specific findings. We must reach the merits whenever we can, OCGA § 5-6-30, and here we have the necessary facts to do so.[1]

Moreland contends that the subrogation provisions violate the statutory requirement that uninsured motor vehicle insurers "pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits [not less than specified amounts]." OCGA § 33-7-11 (a) (1). He points out that if Ford had paid the judgment himself, Ford's obligation would not be reduced by what Moreland might collect from other sources. Accordingly, he concludes, if he is entitled to the entire $14,293.40 from the tortfeasor, then the uninsured motorist carrier should not be permitted to contractually limit coverage to less than that amount. These arguments were rejected by this Court in *Johnson v. State Farm Mut. Auto. Ins. Co.,* 216 Ga. App. 541, 544 (455 SE2d 91) (1995) (medical insurance benefits set-off), and *Northbrook Property &c. Ins. Co. v. Merchant,* 215 Ga. App. 273 (450 SE2d 425) (1994) (workers' compensation benefits set-off).

Moreland distinguishes *Johnson* by arguing that Johnson's recovery would have exceeded the amount of his damages, since the uninsured motorist carrier and the medical insurer were the same company. Thus, Moreland concludes *Johnson* holds that a plaintiff cannot recover twice from one insurance company under a single contract of insurance. But Moreland reads *Johnson* too narrowly. Numerous case scenarios are discussed, the common thread being adherence to "the principle that the insured should not receive more under his insurance policies than his actual damages and . . . that such a recovery was contrary to the public policy behind the Uninsured Motorist Act." Id. at 543.

If the policy does not preclude a total recovery but does reject duplicative recovery, it is enforceable because it does not contravene

---

[1] Appellant raises this very point as the basis of its motion for reconsideration, and appellee has not responded that he contests the facts.

public policy. " ' "An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others." ' *Georgia Farm Bureau Mut. Ins. Co. v. Musgrove*, 153 Ga. App. 690, 692 (266 SE2d 228) [(1980)]." *Wilson v. Cotton States Mut. Ins. Co.*, 183 Ga. App. 353, 354 (1) (358 SE2d 874), overruled on issues concerning *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986), in *Vogtle v. Coleman*, 259 Ga. 115, 119 (376 SE2d 861) (1989). "The statute is designed to protect the insured as to his actual loss." *State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710, 714 (177 SE2d 257) (1970). Moreland would have a recovery greater than his damages should he prevail. The rule is that "a non-duplication of benefits clause providing for setoff of medical benefits paid *is* enforceable when damages are equal to or below the uninsured motor vehicle policy limits because in such circumstances the clause only reduces the uninsured motorist payment by the amount of the prior medical payment without reducing recovery of all damages." (Emphasis in original.) *Johnson*, supra at 544. In this case, as in *Johnson*, "the non-duplication clause operates to preclude double recovery, not to reduce the recovery of all sums for which the tortfeasor is liable." Id. Ford was liable for $14,293.40. Moreland received some of this from Southwire. The balance, when paid by CNL, will make him whole.

Cases cited by Moreland as support, many of which were discussed in *Johnson*, are distinguishable on this basis, since the insureds in those cases had actual damages greater than their uninsured motorist coverage. See, e.g., *Phillips v. State Farm Mut. Auto. Ins. Co.*, 437 F2d 365 (5th Cir. 1971); *Woods v. State Farm Mut. Auto. Ins. Co.*, 234 Ga. 782 (218 SE2d 65) (1975); and *State Farm Mut. Auto. Ins. Co. v. Johnson*, 126 Ga. App. 45 (190 SE2d 113) (1972). *Travelers Indem. Co. v. Liberty Loan Corp. &c.*, 140 Ga. App. 458 (231 SE2d 399) (1976), involved the doctrine of respondeat superior and is inapplicable here. *Woods*, supra, and *Travelers Indem. Co. v. Williams*, 119 Ga. App. 414 (167 SE2d 174) (1969), also differ because the language of the uninsured motorist provisions at issue attempted to circumvent the statute.

Moreland denies that he will receive a double recovery if CNL is denied set-off, in that Southwire has the right to pursue all amounts received by Moreland through its policy's purported subrogation provisions: "If a Covered Person receives any . . . compensation from a third party . . . because of an injury . . . for which he makes a claim, the Plan would be entitled to reimbursement from the Covered Person for expenses paid by the Plan. An exception would apply to insurers on policies of insurance issued to and in the name of the Covered

Person."[2]

By the latter sentence, Southwire specifically limits its right of subrogation so that it does not extend to any recovery Moreland obtains under his insurance policies, such as the CNL uninsured motorist policy. Any claim Southwire might have against Ford based on its contract with Moreland has no bearing on claims for which CNL is obligated under its contract with its insured. The issue here is not Southwire's rights but rather Moreland's. Moreland does not represent Southwire, and its subrogation interests are irrelevant to CNL's statutory and contractual obligations to him. Moreover, under the purported Southwire plan, Moreland is not being denied 100 percent recovery of the amount of the judgment because he would be required to reimburse Southwire only "if" he recovered from a third party. Moreland's non-entitlement from CNL of amounts paid by Southwire's plan requires him to reimburse Southwire for nothing.

CNL also contends that since it is not the tortfeasor, it is not a "third party" from whom Moreland is receiving compensation as contemplated by the Southwire subrogation provision. The point is rendered moot by our holding.

Moreland argues that his Southwire group insurance policy is part of a plan governed by the Federal Employment Retirement Income Security Act (ERISA), 29 USC § 1001 et seq., and is entitled to mandatory subrogation pursuant to that law, which he asserts supersedes CNL's contract limitation. The record is devoid of any evidence of ERISA's applicability to Southwire's or CNL's policy, and of any raising of this ground in the trial court.

CNL also raises the inapplicability of the collateral source rule, but the point was not raised in its motion for set-off or in Moreland's response or in the trial court's order, so we do not address it. *Ellison v. State*, 216 Ga. App. 639, 641 (3) (455 SE2d 361) (1995).

The judgment should be reversed and the trial court directed to determine the amount Moreland has been paid by the sources named in the CNL policy, by which amount the judgment against CNL should be reduced.

DECIDED MARCH 19, 1997 —
RECONSIDERATION DENIED APRIL 4, 1997 — ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Before Judge Weeks.
*Webb, Carlock, Copeland, Semler & Stair, Edward A. Miller*, for

---

[2] The Southwire policy is not in the record as evidence but the relevant portion is attached to CNL's motion to set off the verdict as an excerpt of the larger document. Moreland does not contest its accuracy or applicability to Moreland and in fact repeats and depends on the quotation in his response to the motion.