523 S.E.2d 50 (1999)
240 Ga. App. 201
In the Interest of T.L.H. et al., children.
No. A99A1393.
Court of Appeals of Georgia.
September 29, 1999.
*51 Newell M. Hamilton, Jr., Brunswick, for appellant.
Edward Bess, Sr., pro se.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, James A. Chamberlin, Jr., Brunswick, for appellee.
SMITH, Judge.
The father of D.T.B. appeals from the order of the Juvenile Court of Glynn County terminating his parental rights. The mother's parental rights to three of her children, including D.T.B., were also terminated, as were the rights of the putative fathers of the other two children. The mother filed an appeal as well, but subsequently withdrew her appeal. Although the father contends that the burden of proof required for termination was not met, we find that the evidence presented amply supported the decision to terminate his parental rights to D.T.B.
The decision to terminate parental rights is a two-step process. The court must first determine whether clear and convincing evidence exists of parental misconduct or inability. OCGA § 15-11-81(a). If it does, then the court decides whether termination of parental rights is in the best interest of the child. Parental misconduct or inability is found when the child is deprived; the lack of proper parental care or control has caused the deprivation; the deprivation is likely to continue or will not be remedied; and it is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81(b)(4)(A); In the Interest of A.M.V., 222 Ga.App. 528, 529, 474 S.E.2d 723 (1996). The same factors that show parental misconduct or inability may also support a finding that termination is in the best interest of the child. In the Interest of D.T., 221 Ga.App. 328, 329(1), 471 S.E.2d 281 (1996). In cases where a parent's rights to a child have been terminated, the appropriate standard of appellate review is whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights to custody have been lost, viewing the evidence in the light most favorable to the appellee. In the Interest of J.D.D., 215 Ga. App. 68, 69, 449 S.E.2d 655 (1994). We must give deference to the juvenile court in the area of factfinding and affirm its judgment unless the appellate standard is not met. Id.
The record shows that D.T.B., a boy, was born on September 23, 1993. His mother has a long history of drug abuse going back to age 14. She has been in numerous outpatient treatment programs and at least seven long-term residential treatment programs. At the time of the hearing on the termination petition she was enrolled in her second one-year residential treatment program, with nine months left to complete. Two older female siblings of D.T.B. were removed from her custody in 1991 because of her neglect and involvement with drugs. D.T.B. was removed from her custody in 1994 when appellant and the mother were arrested for selling crack cocaine.
The father has a long history of involvement with drugs and other criminal activity. He has been incarcerated for a number of felonies, has spent most of the time since 1988 behind bars, and was in prison when D.T.B. was born. He was released when D.T.B. was two months old and lived with him for two months before being arrested with the mother. He has remained incarcerated since that time.
*52 The father essentially concedes that this evidence demonstrates D.T.B.'s deprivation. He contends, however, that the standard required for terminating his parental rights was not met in this case because no showing was made that the deprivation will continue. He focuses on the lack of evidence of his unfitness, and on certain apparently mistaken testimony of a caseworker from the Glynn County Department of Family & Children Services concerning his possible release from prison.
The father argues that D.T.B.'s deprivation was caused entirely by his incarceration. He points to the testimony of D.T.B.'s mother that during the two months the father lived with D.T.B., he provided the baby with food and diapers and made an effort to be a father. He also argues that the trial court relied heavily on the testimony of the DFACS caseworker that she believed the father could not be paroled from prison until 2001 and that it was not fair to make D.T.B. wait that long to determine whether the father could demonstrate an ability to care for the child. The father states in his brief that he has now been released from prison, maintains a home, and works full-time. But he has not supplemented the record with evidence to support these statements in his brief, which do not constitute evidence. "The burden is on him who asserts error to show it affirmatively by the record. A brief cannot be used in lieu of the record for adding evidence." (Citations and punctuation omitted.) CNL Ins. America v. Moreland, 226 Ga.App. 57, 58, 485 S.E.2d 515 (1997).
But even if the statements in his brief are true and supported by the record, the juvenile court could not rest a decision with regard to the child's future on a father's bare assertion that he is now ready to assume the responsibilities of fatherhood, when those positive promises are "contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 205(2), 480 S.E.2d 243 (1997). And in this case, notwithstanding two months of diapering and feeding, the father's past conduct also includes the complete failure to communicate with D.T.B. in any way during the father's most recent incarceration. It includes a nearly complete failure to comply with the case plan goals established for him. The case plan required him to file a legitimation petition, pay child support, and visit and maintain a relationship with D.T.B. to the best of his ability. He did not pay child support and had no contact whatsoever with the child. D.T.B. does not even know that appellant is his father. The father filed a legitimation petition only after DFACS filed a petition to terminate his parental rights.
Appellant has four other children, ranging from 14 to 29 years old, and his failure to provide proper support for them indicates that the deprivation of D.T.B. is likely to continue. Termination of parental rights is not warranted because of incarceration of the parent alone. But repetitive past incarcerations may be a factor in deciding whether the deprivation caused by the parent's incarceration is likely to continue.
When an incarcerated parent has a criminal history of repetitive incarcerations for the commission of criminal offenses, this constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue.
(Citation and punctuation omitted; emphasis in original.) In the Interest of D.A.P., 234 Ga.App. 257, 259, 506 S.E.2d 438 (1998).
After reviewing the evidence presented in the light most favorable to the appellee, we conclude that given the length of time that the father's problems have existed, his history with four other children, and his failure to communicate with D.T.B., the juvenile court correctly determined that the child's deprivation was likely to continue and that it was in the best interest of D.T.B. to terminate the father's parental rights.
Judgment affirmed.
POPE, P.J., and ELDRIDGE, J., concur.