**SECOND DIVISION
MILLER, P. J.,
MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 1, 2021**

# In the Court of Appeals of Georgia

A20A1902. NAPIER JR. et al. v. KEARNEY.

MERCIER, Judge.

William Napier, Jr., and Katherine Napier filed a lawsuit against Paul Kearney, alleging that he falsely represented the condition of the house they purchased from him. Specifically, they contend that Kearney failed to disclose moisture intrusion and flooding. They sought rescission and alternatively damages for fraud, negligent misrepresentation, and breach of contract. Kearney filed a motion for summary judgment, which the trial court granted, and the Napiers appeal the trial court's order.[1] Finding that the Napiers waived their rescission claim and failed to show that Kearney had knowledge of flooding in the backyard, we affirm in part. However, as

---

[1] While the Napiers originally asserted additional claims regarding "settlement movement, cracking or breakage of the structural support of the foundation," they do not appeal the trial court's ruling on these claims.

there is a question of material fact as to whether Kearney concealed moisture intrusion from the Napiers, we reverse in part.

"On appeal, we must view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the [Napiers] as nonmovants." *Conway v. Romarion*, 252 Ga. App. 528 (557 SE2d 54) (2001). So viewed, the evidence shows that in July 2015, the Napiers purchased a house from Kearney. Prior to the closing of the sale, a disclosure statement was completed by Kearney and provided to the Napiers. In the disclosure statement, Kearney stated that based on his knowledge and belief at the time, there had been no water intrusion into the dwelling, nor "any flooding."

While the sale was pending, the Napiers retained a home inspector who conducted an inspection. William Napier attended the inspection, during which time, neither the inspector nor William discovered any water intrusion or flooding.

The Napiers moved into the house in August 2015. In January 2016, they found that the floor and subfloor in the dining room were wet and "had experienced significant water intrusion," and there was "significant pooling of water in the rear

2

of the backyard." On October 14, 2016, the Napiers sent a rescission letter to Kearney and his wife, to which Kearney did not respond.

1. The Napiers argue that the trial court erred in granting summary judgment on their rescission claim. They claim that there was a genuine issue of material fact as to when they learned of the problems leading to their attempted rescission. We disagree and find that the Napiers waived rescission as a matter of law by failing to act promptly.[2]

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011) (citation and punctuation omitted).

> In order to effect a rescission, the purchaser must act promptly and adhere to the intent to rescind or risk waiver of his claim: An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered.

---

[2] The Napiers also argue that a demand letter they sent to Kearney was an inadmissible settlement offer and could not be used as waiver evidence. However, we need not reach that issue to determine that the Napiers waived rescission.

*Conway*, supra at 530 (1) (citation and punctuation omitted). Rescission "is not favored under the law, and courts are quick to find that the right to rescind has been waived." Id.

The Napiers discovered the problems in the house in January 2016. However, they did not attempt to rescind the contract until ten months later in a letter dated October 14, 2016. "Waiver generally is found where the intent to rescind is not asserted in a timely fashion[.]" *Conway*, supra at 530-531 (1). The Napiers argue that they did not learn of the underlying problems until their insurance company denied their claim in April 2016. However, William Napier averred that he observed "significant water intrusion" in the interior of the house and "significant pooling of water in the rear of the backyard" in January 2016. The timing of the insurance company's denial is immaterial as to when the "facts supporting the claim for rescission" were discovered. See id. at 530 (1). The Napiers' failure to announce until 10 months after the discovery of the problems amounted to waiver as a matter of law. See *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 911-912 (2) (600 SE2d 841) (2004) (delay of almost nine months constituted waiver of rescission as a matter of law); *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (2) (547 SE2d 373) (2001) (buyer waived her claim to rescind sales contract when she waited ten

4

months to rescind following her discovery of defects in house); *Orion Capital Partners v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 543 (2) (b) (478 SE2d 382) (1996) (attempt to rescind contract seven months after discovery was "too late as a matter of law"). As such, we affirm the trial court's grant of summary judgment regarding the Napiers' claim for rescission.

2. The Napiers argue that the trial court erred by granting summary judgment on their fraud, negligent misrepresentation, and breach of contract claims, because Kearney made false representations in the disclosure statement as to whether he had knowledge of moisture intrusion and flooding on the property.

> The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. When, as in the case at bar, the buyers allege fraudulent concealment, they must prove, as a factor of justifiable reliance, that they could not have discovered the alleged defect in the exercise of due diligence.

*Lehman v. Keller*, 297 Ga. App. 371, 372-373 (1) (677 SE2d 415) (2009) (citations and punctuation omitted). "The only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity

5

of the information disclosed." *Bithoney v. Fulton-DeKalb Hosp. Authority*, 313 Ga. App. 335, 343 (2) (n. 19) (721 SE2d 577) (2011) (citation and punctuation omitted).

> If a seller of real estate knows of a defect in the property of which the purchaser is ignorant, and which would likely influence the purchase decision, the seller has a duty to disclose his knowledge to the purchaser. Where a buyer seeks to recover from a seller who has passively concealed a defect, the buyer must prove that the vendor's concealment of the defect was an act of fraud and deceit, including evidence that the defect could not have been discovered by the buyer by the exercise of due diligence and that the seller . . . was aware of the problems and did not disclose them.

*Salinas v. Skelton*, 249 Ga. App. 217, 221-222 (2) (547 SE2d 289 (2001) (citations and punctuation omitted).

(a) Claiming that Kearney misrepresented that the house had no moisture intrusion, the Napiers point to evidence that Kearney's placement of rugs inside the house concealed water intrusion during the sales process. Additionally, they point to evidence that the refrigerator was shown in one location in the listing photographs, but had been moved to a different location before the home inspection, which concealed evidence of water intrusion. Kearney does not dispute that there was evidence of water intrusion under the refrigerator and the rugs, but he claims that the

6

location of the refrigerator and rugs was due to "routine home design choices." Moreover, Kearney seems to argue that the Napiers could have moved the rugs and refrigerator during the home inspection, and their failure to do so displayed an absence of due diligence. However, "the question of whether a purchaser has exercised reasonable diligence in inspecting real property is usually a jury question." *Akins v. Couch*, 271 Ga. 276, 278 (3) (b) (518 SE2d 674) (1999) (even when buyers failed to retain a home inspector, summary judgment was improper because a jury question existed as to whether the buyers exercised due diligence).

Here, there is evidence that Kearney moved a refrigerator and placed rugs in an attempt to conceal water intrusion. We cannot say that the Napiers failed to exercise due diligence as a matter of law by failing to move the furnishings to inspect the floors beneath. Therefore, a jury question exists as to whether Kearney actively concealed the water intrusion and whether the Napiers exercised due diligence in their inspection. See *Conway*, supra at 533 (3) (when damage may have been concealed by the seller's furnishings, there was a jury issue as to whether the buyers had exercised due diligence in inspecting the house and whether the damage was actively concealed by the seller). As such, the trial court erred in granting summary judgment on the Napiers' claims related to moisture intrusion.

7

(b) The Napiers also contend that Kearney falsely represented that the property had no flooding. They argue that their backyard has flooded after heavy rains, and that Kearney knew of the flooding but said otherwise on the disclosure statement, and even with the exercise of due diligence they could not have discovered the defect.

However, the Napiers have failed to show evidence that Kearney knew of the flooding. To support their claim, the Napiers cite to their own discovery responses, where they state: "Brenda Kearney . . . testified that a drain was installed to deal with flooding on the side of the Property." However, they do not cite to her deposition, which was not part of the trial court record. Instead, the parties argue in their appellate briefs about which party was responsible for filing the deposition. "[T]he burden of timely filing depositions and other discovery material with the trial court lies with the party which intends to rely upon it." *Parker v. Silviano*, 284 Ga. App. 278, 281 (2) (643 SE2d 819) (2007) (citation and punctuation omitted). Since Brenda Kearney's deposition was not filed in the trial court, we cannot consider her testimony on appeal. See id.; *CNL Ins. America v. Moreland*, 226 Ga. App. 57, 57 (485 SE2d 515) (1997) ("It is well settled that the burden on appeal is on the appellant to show error by the record. When a portion of the evidence bearing upon

the issues before the trial court was not filed in the trial court and not made a part of the record on appeal, this Court may not consider such material.")

The Napiers also cite to the fact that a shed was located on a deck and not "in the backyard where the flooding occurs which suggests a knowledge of the condition and an attempt to avoid damage from the condition." This is mere speculation and "a motion for summary judgment cannot be denied based on speculation and conjecture."[3] *Willingham Loan & Realty v. Washington*, 311 Ga. App. 535, 536 (716 SE2d 585) (2011) (citation and punctuation omitted).

Finally, the Napiers point to the affidavit of their engineer, who averred that "drainage problems . . . [was a] feature[] that would be noticeable and observed by [Kearney] for several years." However, the engineer did not opine that the "drainage problems" caused "flooding," or that flooding would have been observable during periods of heavy rain. The Napiers failed to point to evidence that the property actually flooded while Kearney owned it or that he had knowledge of any flooding, as such, we affirm the trial court's ruling on the Napiers' flooding claims. See

---

[3] The Napiers' speculation regarding the shed is noticeably different from the evidence regarding the rugs and refrigerator placement in Division 2 (a). The Napiers are not arguing that the shed was located on the deck to conceal flooding underneath the shed. Instead, they claim that the shed's placement on the deck constituted proof that Kearney knew of flooding in a different area of the backyard.

9

generally *Resnick v. Meybohm Realty*, 269 Ga. App. 486, 489-490 (1) (b) (604 SE2d 536) (2004).

3. The Napiers' claims for attorneys fees and punitive damages are derivative of their substantive claims. "Fraud is an intentional tort for which punitive damages may be awarded. Furthermore, where a plaintiff has set forth a valid claim for an intentional tort, such as fraud, he may be entitled to recover the expenses of litigation, including attorney fees." *Stephen A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 682 (7) (754 SE2d 640) (2014) (citations and punctuation omitted). As the trial court erred in granting summary judgment to Kearney on the Napiers' claims regarding moisture intrusion, the court likewise erred in granting summary judgment to Kearney on their request for attorney fees, costs, and punitive damages as derivative of the Napiers' moisture intrusion claims. See id. However, we affirm the trial court's grant of summary judgment to Kearney on the Napiers' attorneys fees and punitive damage claims that were derivative of their flooding claims.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*