**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2023**

# In the Court of Appeals of Georgia

A23A0616. TISDALE v. FARMERS INSURANCE EXCHANGE.

DOYLE, Presiding Judge.

Cheryl Tisdale sued Russel Graves for negligence after she was injured in an automobile collision while she was driving her own vehicle containing passengers while logged into the Uber Technologies ("Uber") application as a paid driver. Tisdale served Farmers Insurance Exchange with the complaint, seeking underinsured motorist ("UM") coverage pursuant to an insurance policy Farmers issued to Raiser, LLC, a subsidiary of Uber. Farmers moved for summary judgment, arguing that Tisdale did not qualify as an insured under the Uber policy, or, in the alternative, that she was barred from seeking coverage because she intentionally concealed or misrepresented material facts and committed fraud by using a false identity in her Uber driver application and while using the app. Following a hearing, the trial court

granted summary judgment to Farmers. Tisdale appeals the judgment, arguing that the trial court erred by basing its ruling on documents that were not part of the trial court record and by granting summary judgment. For the reasons that follow, we affirm.

> Summary judgment is . . . proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. . . . [When] considering a grant or denial of summary judgment, we apply a de novo standard of review, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. . . . [A]t the summary-judgment stage, we do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution. Additionally, it is well established in Georgia that insurance contracts are governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning. . . . [T]he hallmark of contract construction is to ascertain the intention of the parties, as set out in the language of the contract. As a result, when the language of an insurance policy defining the extent of an insurer's liability is unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties. Finally, the proper construction of a contract[] and whether the contract at issue is ambiguous[] are questions of law for the court to decide.[1]

---

[1] (Citations and punctuation omitted.) *Jones v. Ga. Farm Bureau Mut. Ins. Co.*, 367 Ga. App. 35, 37 (___ SE2d ___) (2023). See also OCGA § 9-11-56 (c).

So viewed, the record shows that Tisdale was an Uber driver from 2015 to 2017. According to her deposition, at some point Uber "stopped [her] from driving because they did a background check[,] and something popped up on there . . . they didn't agree with."[2] In 2019, because she did not believe that Uber would hire her under real name, Tisdale applied to work for Uber using the name "Annie Mollie."[3] Uber approved "Mollie's" application, and Tisdale began driving for Uber as Annie Mollie.

In April 2020, Tisdale was involved in an automobile accident with Graves while driving her own car, which was registered under her legal name, and while logged into the driver version of the Uber app as Annie Mollie. Tisdale gave a recorded statement to Farmers as "Annie Mollie."

In May 2020, Tisdale sued Graves for damages arising out of the accident, alleging that he rear-ended her, pushing her vehicle into the path of another vehicle, which struck her, and that she incurred in excess of $184,000 in medical expenses.

[2] Tisdale explained that Uber hired a company to do a background check that revealed a domestic violence charge. She also had a conviction for writing bad checks, and her driver's licence was suspended in DeKalb County at some point.

[3] Tisdale paid a woman "to get an account with Uber," which involved her giving the woman money and copies of her driver's license and car registration in exchange for a fake driver's license and registration with the name Annie Mollie.

Tisdale served her own UM carrier — State Farm Fire and Casualty Company — and Farmers with a copy of the complaint and discovery requests.[4] Farmers filed an answer, alleging in part that coverage for Tisdale under Uber's UM policy had yet to be determined, and filed a cross-claim against Graves. In July 2020, Farmers issued reservation of rights correspondence to Tisdale, informing her that it appeared that her use of a fraudulent driver's license, registration, and insurance card barred coverage under the Uber policy. Included in the letter was a recitation of relevant portions of the UM policy.

Farmers moved for summary judgment, arguing that because Tisdale intentionally concealed or misrepresented material facts and committed fraud by using a false identity in her Uber application and while using the app, she did not qualify as an insured under the Uber policy, and she was barred from seeking coverage based on the fraud condition in the policy. Following a hearing, the trial court granted summary judgment to Farmers, finding that Tisdale (a) did not qualify as an insured under the policy because she did not enter into an agreement to use the Uber app in her own capacity and was not using her own log-in credentials at the time of the accident, and (b) even if she did qualify as an insured, her intentional use of

_____

[4] Tisdale later dismissed State Farm from the case.

4

false identification to use the Uber app precluded coverage based on the fraud condition in the policy. This appeal followed.

1. Tisdale contends that the trial court erred by basing the grant of summary judgment to Farmers on an insurance policy that was not a part of the record. This argument presents no basis for reversal.

During discovery, Tisdale requested that Farmers produce the applicable insurance policy. Farmers objected to the response on the ground that it was proprietary information and might not benefit Tisdale, but agreed to produce a "potentially applicable policy . . . upon receipt of a dul[]y executed non-disclosure agreement." On July 20, 2020, after the parties could not resolve the issue, Tisdale moved to compel production of the policy. In response, Farmers produced a copy of the policy declarations page and moved for a protective order and/or an order requiring Tisdale to execute a proposed non-disclosure agreement before it produced the entire policy.[5]

---

[5] As an exhibit to her reply brief, Tisdale attached a copy of Farmers's "Transportation Network Company/Transportation Network Driver Endorsement" that she obtained from the Georgia Department of Insurance pursuant to an open records request citing OCGA § 33-1-24 (d), which requires Transportation Network Companies ("TNCs") to provide to the Insurance Commissioner a copy of an insurance policy that satisfies the requirements of subsection (b) of that Code section.

On March 22, 2022, Farmers filed a motion for leave to file the policy and an accompanying affidavit under seal and a summary judgment motion, with redacted copies of the affidavit and policy attached as exhibits thereto.[6] In response, Tisdale requested a hearing under Ga. Unif. Sup. Ct. Rule 21.1.[7] On April 12, 2022, the trial court granted Tisdale's motion to compel and denied Farmer's motion for a protective order, giving Farmers ten days to provide her with a copy of the insurance policy. Farmers states that it complied with the order and produced the policy to Tisdale.

The court held a hearing on the summary judgment motion, at which neither the parties nor the court addressed sealing the policy and affidavit. The court did not hold a Rule 21.1 hearing. Thereafter, the trial court granted summary judgment to Farmers, paraphrasing portions of the policy.

Tisdale argues that the trial court erred by basing its ruling on the policy because the record does not contain a legible, unredacted copy thereof. Tisdale did

---

[6] The contents of the documents are completely marked out with large black boxes.

[7] Ga. Unif. Superior Court Rule 21.1 provides: "Upon motion by any party to any civil or criminal action, or upon the court's own motion, after hearing, the court may limit access to court files respecting that action. The order of limitation shall specify the part of the file to which access is limited, the nature and duration of the limitation, and the reason for limitation."

not object on this basis below, and importantly, she does not challenge the accuracy of the trial court's paraphrasing of the policy, contend that the portions of the policy recited in Farmer's reservation of rights letter are inaccurate, or argue that the meaning of the recited portion of the record "is altered when read in conjunction with some other [policy] provision . . . ."[8] The parties apparently agree that Paragraphs B ("Who Is An Insured") and C (3) ("Concealment, Misrepresentation Or Fraud") "[are] the sole [policy] provision[s] at issue, and their recitations of its contents are not in conflict."[9]

---

[8] *Bentley-Kessinger, Inc. v. Jones*, 186 Ga. App. 466, 467 (367 SE2d 317) (1988).

[9] Id.

Notwithstanding Tisdale's failure to raise this issue below,[10] under these circumstances, and given that the trial court made specific findings regarding the wording of the policy, we conclude that the absence of an unredacted copy of the policy in the record below and on appeal does not require reversal.[11] Nevertheless, we note that the absence complicated our review. By failing to ensure that the record below and on appeal contains copies of all relevant documents — unredacted, if appropriate — upon which the trial court relied, parties run the risk that a judgment will be reversed or, in the case of the appellant, affirmed.

---

[10] See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding [that an appellant] must stand or fall upon the position taken in the trial court. Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. If the rule were otherwise, a party opposing a motion for summary judgment need not raise any legal issue, spend the next year thinking up and researching additional issues for the appellate court to address, and require the opposing party to address those issues within the narrow time frame of appellate practice rules. Therefore, absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal.") (citations and punctuation omitted).

[11] See id. Compare *CNL Ins. America v. Moreland*, 226 Ga. App. 57, 58 (485 SE2d 515) (1997) (holding that lack of specific findings by the trial court as to the policy contents and lack of a copy of the policy in the record resulted in the inability of the reviewing court to address the errors raised on appeal).

2. Tisdale also argues that the trial court erred by granting summary judgment to Farmers. We disagree.

As set forth in the policy recitation in Farmer's reservation of rights letter, the policy defines a TNC Driver as "an individual who is operating an 'auto' in connection with the use of 'UberPartner application.'" The "Who Is An Insured" provision provides:

If the Named Insured is designated in the Declarations as:

1. A partnership, limited liability company, corporation or any other form of organization, then the following are 'insureds':

   d. A 'TNC Driver' other than you and your employees and provided that such driver:

      (1) Is using or operating a covered 'auto' that you don't own, hire[,] or borrow in your business or personal affairs;

      (2) Has entered into a contract to use the 'UberPartner application' with one or more of Named Insureds prior to the time of the 'accident'; and

      (3) Has assessed the 'UberPartner application' using log in credentials issued by a Named Insured prior to the time of the 'accident.'

9

However, a person who uses or operates a covered 'auto' while using any other person's log in credentials is not an insured.

Here, at the time of the accident, Tisdale had not entered into a contract to use the Uber app in her own name/capacity, and Uber had not authorized her to drive as an Uber driver; instead, Tisdale operated her vehicle while logged into the Uber app using a false identity. Under these circumstances, Tisdale did not qualify as an insured under the policy Farmer's issued to Uber.

But Tisdale does not challenge the trial court's finding that she did not qualify as an insured under the language of the Farmer's policy. Instead, she argues that she is entitled to coverage pursuant to OCGA § 33-1-24 (b), which mandates UM coverage for TNC drivers providing TNC services, and OCGA § 33-7-11 (a), the Georgia UM statute. We disagree.

OCGA § 33-1-24 (b) requires a TNC company to maintain a primary motor vehicle insurance policy that recognizes a driver as a TNC driver and "explicitly covers the driver's provision of [TNC] services as defined in paragraph (5) of subsection (a) of this Code section" with certain minimum coverage amounts,

including specific UM coverage amounts.[12] Pursuant to OCGA § 33-2-24 (a) (5), TNC services means

> (A) The period of time a driver is logged on to the [TNC's] digital network and available to accept a ride request until the driver is logged off, except for that time period described in subparagraph (B) of this paragraph; and (B) The period of time a driver accepts a ride request on the [TNC's] digital network until the driver completes the transaction or the ride is complete, whichever is later.

Here, Uber *did* provide the statutorily required coverage for TNC drivers and the Uber customers through the Farmers policy, and in fact paid the UM claim of Tisdale's Uber passenger.

Nevertheless, as the trial court concluded, Tisdale's fraud and misrepresentation precluded her from coverage.

The policy contained the following fraud provision:

1. We will not pay for any "loss" or damage in any case of:

a. Concealment or misrepresentation of a material fact; or

b. Fraud;

---

[12] OCGA § 33-2-24 (a) (4) defines a TNC driver as "an individual who uses or permits to be used his or her personal vehicle to provide [TNC] services. Such driver need not be an employee of a [TNC]."

11

committed by you at any time[] and relating to coverage under this policy.

2. If a "TNC Driver" . . . intentionally conceals or misrepresents a material fact or commits fraud relating to coverage under this policy, then we will not pay for any "loss" or damage sustained by that "TNC Driver." . . .

Tisdale concedes that she intentionally misrepresented her identity and presented Uber with a false driver's licence and a false insurance registration card in order to become a driver. This misrepresentation and fraud provided her coverage under the Farmer's policy, which clearly bars the payment of damages to a TNC driver who commits fraud or intentionally misrepresents or conceals a material fact

12

relating to coverage.[13] Accordingly, the trial court properly granted summary judgment to Farmers.

*Judgment affirmed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[13] Tisdale's actions satisfied all of the elements of fraud. See *Lehman v. Keller*, 297 Ga. App. 371, 372-373 (1) (677 SE2d 415) (2009) ("The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.") (citation and punctuation omitted). See also OCGA § 33-1-9 (a) (1) (providing that a person who "knowingly or willfully: makes . . . any false or fraudulent statement or misrepresentation of any material fact or thing: (A) [i]n any written statement or certificate; (B) [i]n the filing of a claim; (C) [i]n the making of an application for a policy of insurance; (D) [i]n the receiving of such an application for a policy of insurance; or (E) [i]n the receiving of money for such application for a policy of insurance commits the crime of insurance fraud").